UNITED STATES of America, Appellee,

v.

ONE 1976 FORD F–150 PICK–UP VIN
F14YUB03797, Appellant.

No. 85–1048.

United States Court of Appeals,
Eighth Circuit.

Submitted May 23, 1985.

Decided August 9, 1985.

Dale Hudson, Sr., pro se.

Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

Dale Hudson, Sr. appeals from the judgment of the district court ordering the forfeiture of his pick-up truck because it was used to facilitate criminal activity. *United States v. One 1976 Ford F–150 Pick-Up*, 599 F.Supp. 818 (E.D.Mo.1984). We reverse.

On August 16, 1982 a St. Louis police officer, with the assistance of the Ste. Genevieve County Sheriff's Department, executed a search warrant pertaining to marijuana fields in Ste. Genevieve County. During the surveillance the officers saw Hudson driving a 1976 Ford pick-up (truck) near the marijuana fields. The officers further observed Hudson park next to a small open shed located near the fields, heard him unload metal objects (roofing material) from the truck, and watched him walk to the field and inspect the marijuana crop. Soon thereafter, the officers arrested Hudson and his son. At the time of the arrest, the officers searched the premises and found in or near the shed metal roofing, work gloves, a bucket filled with what may have been marijuana leaves,[1] and empty fertilizer bags.

---

1. Although one officer testified that he believed the substance in the bucket was marijuana, no chemical analysis was performed and no expert positively identified the substance.

On October 14, 1982 Hudson was convicted of violating 21 U.S.C. § 841(a). The conviction was affirmed on September 28, 1983. *See United States v. Hudson,* 717 F.2d 1211 (8th Cir.1983). In December, 1982 the United States filed its complaint for forfeiture. At a hearing, the government established that the shed was near the marijuana fields, that the items mentioned above were found in or near the shed, and that the truck was used to carry materials to be used for roofing the shed. The district court concluded that the truck was subject to forfeiture under 21 U.S.C. § 881(a)(4),[2] because it facilitated the possession of the drugs by providing Hudson with transportation to the fields. Hudson attacks the district court's finding that use of the truck to transport roofing to the shed, and himself to the fields, "facilitated" the marijuana possession.

■ In *United States v. Thirteen Thousand Dollars in United States Currency,* 733 F.2d 581 (8th Cir.1984), we noted that under 19 U.S.C. § 1615, "the government has the initial burden of showing probable cause for the institution of the forfeiture suit. Once probable cause for believing that the property was involved in criminal wrongdoing is established, the burden shifts to the claimant to show that the property was not used in violation of the law." *Id.* at 584. The government's initial burden, although heavy, may be satisfied by circumstantial evidence. *United States v. Certain Real Property Situated at Route 3,* 568 F.Supp. 434, 436 (W.D.Ark. 1983).

Some courts have taken an extremely broad view of section 881, upholding forfeitures of vehicles where they were used to transport drug dealers to locations of drug sales and/or negotiations, even though there was no evidence that contraband was actually transported in the vehicle, that the negotiations were conducted in the vehicle, or that the vehicle was used as a decoy or look-out. *See, e.g., United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1427 (11th Cir.1983) (per curiam); *United States v. One 1977 Cadillac Coupe DeVille,* 644 F.2d 500, 503–04 (5th Cir. Unit B 1981); *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421, 427 (2d Cir. 1977); *cf. United States v. One 1972 Chevrolet Corvette,* 625 F.2d 1026, 1029 (1st Cir.1980) (transportation of drug dealer to receive "front money" insufficient to support forfeiture); *United States v. One 1970 Pontiac GTO,* 529 F.2d 65 (9th Cir.1976) (per curiam) (upholding forfeiture where vehicle was "used to help the sale of the contraband; it was not used merely to commute to the scene of criminal activity); *Weinstein v. Mueller,* 563 F.Supp. 923, 929 (N.D.Cal.1982) (noting that mere use of vehicle to commute to scene of illegal activity is insufficient); *United States v. McMichael,* 541 F.Supp. 956, 959 n. 6 (D.Md.1982) (same); *United States v. One 1970 Buick Riviera,* 374 F.Supp. 277 (D.Minn.1973) (use of vehicle to transport drug dealer to airport to embark on drug buying trip insufficient).[3] We note that this circuit has not had occasion to extend section 881 so far, for in most of the cases there was evidence that the vehicle was actually used to transport the drugs. *See, e.g., United States v. Milham,* 590 F.2d 717 (8th Cir. 1979); *United States v. One 1976 Lincoln Continental Mark IV,* 584 F.2d 266 (8th Cir.1978) (per curiam); *United States v. One 1972 Toyota Mark II,* 505 F.2d 1162 (8th Cir.1974).

---

**2.** 21 U.S.C. § 881(a)(4) provides for forfeiture of "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property in [§ 881(a)(1) or (2)]...."

**3.** The legislative history of section 881 sheds little light on the intended scope of the government's power to seek forfeitures. However, we would note that the only explicit reference to the forfeiture of conveyances indicates that the statute should be strictly construed. *See* H.R. Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4566, 4623 (indicates conveyances are subject to forfeiture if they are "used, or intended for use, *to transport or conceal* such violative property") (emphasis added).

■ Assuming that mere transportation of a person involved with illicit activity would be enough to support forfeiture of a vehicle in appropriate circumstances, we decline to extend this rationale to the forfeiture of the pick-up truck here. There was no evidence that Hudson regularly used the truck to visit and inspect the marijuana crop. The truck was only observed being used for this purpose on the one occasion. Thus, there was little showing, apart from a singular episode of transportation, that use of the truck was an "integral part" of Hudson's marijuana operation. *Cf. United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d at 423 (vehicle used to transport dealers to meeting which was "integral part" of drug conspiracy). In any event, we do not believe that the forfeiture statute was meant to support divestiture of private property based on an insubstantial connection between the vehicle and the illegal activity such as that which has been presented here.

Moreover, absolutely no marijuana was found in the truck and there is but speculation to suggest it was to be used to transport marijuana in the future. There was evidence that pieces of metal roofing were transported in the truck and that this material was to be used to repair the small shed which was on land adjacent to the marijuana fields. While this use of the truck may be said to have facilitated the repair of the shed, we do not believe this fact suffices to show that the truck facilitated the possession of the marijuana. It is unclear as to how the shed helped or otherwise made easier the possession of the crop. In fact, there was testimony that the shed was too small to be of any use in processing the crop or in shielding the drugs from detection once harvested.

Finally, there was no evidence presented that the truck was used to transport seed, fertilizer, agricultural tools or other equipment, items which could be said to have facilitated the cultivation of the illegal crop. Even though some buckets of water, empty fertilizer bags, a pair of gloves, and a bucket containing vegetative matter which may or may not have been marijuana, were found in or near the shed,[4] there was no evidence as to how long these items had been there. It is, of course, plausible that the truck was used to transport these materials. However, it is just as likely that they were transported in another vehicle at some earlier time. In any event, Hudson was not seen unloading these or any like materials from the truck, nor was there any physical evidence which would indicate that the truck was used to transport such materials.

■ We believe that the truck's direct connection to the illicit crop is simply too tenuous and far removed to support its forfeiture. In fact, the government's proof shows little more than that the truck was seen on one occasion in the approximate area where marijuana was grown. Mere suspicion of a vehicle's use in illegal activity will not suffice to support forefeiture. Moreover, "[f]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law." *United States v. One Ford Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939). Here, we cannot say that the truck was shown to have facilitated the illegal activity or was otherwise "substantially associated" with Hudson's marijuana farm. *United States v. One 1979 Datsun 280ZX*, 720 F.2d 543, 544 (8th Cir.1983) (per curiam); *see also United States v. One 1972 Chevrolet Corvette*, 625 F.2d at 1029 (must be "substantial connection between the property and the underlying criminal activity") (quoting Psychotropic Substances Act of 1978, Joint Explanatory Statement of Titles I and II, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad. News 9518, 9522); *United States v. One 1974 Cadillac Eldorado*, 575 F.2d 344, 345 (2d Cir.1978) (must be "sufficient nexus"

---

**4.** The government asserts in its brief that agricultural tools were also found in or near the shed. However, there was no testimony to support the existence of such tools, unless one can properly classify buckets and gloves in that category.

between vehicle and illegal activity.) Therefore, the judgment of the district court ordering forfeiture must be, and is, reversed.