**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**$38,600.00 IN U.S. CURRENCY, Defendant,**

**Alvaro Freitas and August Freitas, Claimants-Appellants.**

**No. 85-1017.**

United States Court of Appeals, Fifth Circuit.

March 12, 1986.

A.L. Hamilton, Placerville, Cal., for claimants-appellants.

Michael S. McDonald, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., El Paso, Tex., for plaintiff-appellee.

Before JOLLY and HILL, Circuit Judges, and HUNTER,* District Judge.

E. GRADY JOLLY, Circuit Judge:

This case is on appeal to determine whether the district court properly ordered the forfeiture of $38,600 in United States currency under 21 U.S.C. § 881.[1] The money, found in cash, taped under the claimant's car seat, was discovered during a warrantless search at a permanent Border Patrol checkpoint near Sierra Blanca, Texas. Because the government failed to establish probable cause for the belief that a substantial connection existed between the seized money and its exchange for a controlled substance, we reverse the district court's order of forfeiture.

* District Judge of the Western District of Louisiana, sitting by designation.

1. 21 U.S.C. § 881 states:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

....

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

I

On May 28, 1984, a vehicle driven by appellant Alvaro Freitas was stopped at the permanent Border Patrol checkpoint on Interstate 10 near Sierra Blanca, Texas. Border Patrol Agents Bullock and Steinbrecker were on duty at the time. When questioning Freitas about his citizenship, Agent Bullock indicated that he smelled the odor of marijuana emanating from inside the car. The agents then referred Freitas to a secondary inspection area and searched the passenger compartment. In the back seat, they found a blue nylon travel bag which contained a small pipe bearing marijuana residue, a package of cigarette papers, a small pair of scissors, and a small metal box. The agents then removed the bottom portion of the back seat and discovered three large manila envelopes containing several rubber-band-wrapped bundles of twenty, fifty, and hundred dollar bills, totaling approximately $38,600 in United States currency.

On July 12, 1984, the government filed a forfeiture complaint pursuant to 21 U.S.C. § 881, alleging that the money found in the Freitas vehicle was "furnished, or intended to be furnished, by Alvaro James Freitas ... in exchange for controlled substances." Both Alvaro Freitas (Alvaro) and his father, August Freitas (August), responded as claimants.

At the forfeiture trial, the government called Border Patrol Agent Steinbrecker and Drug Enforcement Administration Special Agent Enio Hella as its witnesses. Agent Steinbrecker testified that when responding to Agent Bullock's questions at the Sierra Blanca checkpoint, Alvaro initially stated that the money was his and that he was en route to Fort Lauderdale, Florida. Steinbrecker testified that Alvaro asserted later that the money belonged to an uncle in California, whom Alvaro first identified as "Johnny Fernandez" but subsequently referred to as "Carlos Castro," and that Alvaro was to deliver it to his uncle's ranch. Steinbrecker testified that Alvaro then stated that he did not know the exact location of the ranch, that he did not have the phone number, and that he would have to call his wife for directions.

Special Agent Hella, who became involved in the case following the seizure of the manila envelopes, testified that in his opinion the money found in Alvaro's vehicle was part of a narcotics transaction. Hella's conclusion was based upon his drug enforcement experience and observations concerning "where [the money] was coming from, and where it was intended to go. As well as the [denominations] and this being secured in rubber bands."

Following the government's presentation, Alvaro Freitas testified that the seized money, which he claimed totaled $45,000—not $38,000 as indicated by the government—belonged to his father and was to be used for purchasing horses. On the evening that he was stopped at the Sierra Blanca checkpoint, Alvaro stated, he was traveling from his father's ranch in Sacramento, California, to the Dallas-Fort Worth area. Prior to his leaving, Alvaro testified, his father secured the money from an office safe at the Freitas ranch, the two men counted and packaged it, and Alvaro put it in the car. Upon arriving in Dallas, Alvaro was again to contact his father, who was physically unable to drive long distances; his father was to fly to Texas, and the two men were to go horse-shopping at area ranches. On cross-examination, however, Alvaro could not identify any particular ranch at which the men had intended to shop, and he had no idea as to how many horses could be purchased with $45,000. He also admitted that he had no uncle named "Johnny Fernandez" or "Carlos Castro," and he claimed that he had falsely told Border Patrol Agents that the money belonged to an uncle because at the time he was scared.

After Alvaro finished testifying, August Freitas took the stand and generally confirmed his son's story. August testified about his background as a horse trainer, his desire to purchase a racing filly for breeding purposes, and that it was customary to deal in horses exclusively with cash. According to August, Alvaro drove to Tex-

as with August's money instead of flying with his father because it was more convenient: August did not have to carry $45,000 with him on the plane and thereby "create an incident," and the men would have the use of a car when looking for horses.

On December 14, 1984, the district court issued a memorandum of findings and conclusions, ruling for the government. Based upon its findings of fact, the court held that: (1) August Freitas did not have standing to challenge the forfeiture; (2) the government had established probable cause for belief that a substantial connection existed between the seized currency and the exchange of a controlled substance; and (3) Alvaro Freitas failed to rebut the government's case. The court entered a judgment consistent with these determinations. The Freitases filed a timely notice of appeal.

II

The Freitases raise three issues on appeal. First, they contend that the district court erred in admitting into evidence at the forfeiture hearing the money and drug paraphernalia discovered in Alvaro Freitas' car. The Freitases next contend that even if the district court properly admitted the seized items into evidence, the district court erred in holding that the evidence and testimony presented at the forfeiture hearing established probable cause for the belief that a substantial connection existed between the seized money and its exchange for a controlled substance. Finally, the Freitases argue that the district court erred in determining that August lacked standing to contest forfeiture of the money found in Alvaro Freitas' car. Because we find that the government failed to establish probable cause for the belief that a substantial connection existed between the money seized and its exchange for a controlled substance, we do not decide whether the evidence seized was properly admitted. Because, however, we hold the forfeiture to be invalid, we must decide whether August Freitas demonstrated standing to contest the forfeiture so that the court can return the money to the proper party.

III

A.

The Freitases contend that the evidence and testimony introduced at the forfeiture hearing failed to establish probable cause for the belief that a substantial connection existed between the seized money and its exchange for a controlled substance. They claim that "the mere fact that Alvaro Freitas had a large sum of money and was headed east on Interstate 10, had a pipe with some marijuana residue in it ... [and] some rolling papers and did not tell the truth about what he was doing in Texas, does not show more than a mere suspicion." We agree.

Under 21 U.S.C. § 881(a)(6), the government's initial burden in a drug forfeiture case is to show " 'probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute;' *i.e.*, the exchange of a controlled substance." *United States v. $364,960 in United States Currency*, 661 F.2d 319, 323 (5th Cir.1981). The probable cause threshold in this context is the same as that which applies elsewhere: "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Id.* In the instant case, the district court found that the government sufficiently established probable cause based upon "the quantity of currency seized, the circumstances surrounding the detention and search, and the ambiguity displayed by Alvaro Freitas as to the ownership of the money and the destination of his trip." A district court's determination whether the facts adduced at a forfeiture hearing constitute probable cause is a question of law subject to *de novo* review by this court. *Id.* at 323 n. 12.

Probable cause in a forfeiture proceeding may be established by circumstantial evidence. *$364,960 in United States Currency*, 661 F.2d at 324–25. Moreover,

the discovery of a large amount of money, unexplained, can constitute evidence that the money was furnished or was intended to be furnished in return for drugs. *Id.* at 324. Thus, a large amount of money, found in combination with other persuasive circumstantial evidence, particularly the presence of drug paraphernalia, is frequently held sufficient to establish probable cause. *See United States v. $22,287 in United States Currency,* 709 F.2d 442 (6th Cir.1983) (money, heroin, scales, guns were found in search after drug-sale arrest). Here, in addition to the $38,600 discovered concealed under the back seat in Alvaro Freitas' vehicle, the district court's probable cause determination was apparently based upon two other factors: (1) the Border Patrol agents' discovery of a pipe bearing marijuana residue, cigarette rolling papers, a small pair of scissors, and a small tin box, and (2) Alvaro's persistent evasiveness and inconsistency when responding to the Agent's questions concerning his destination and the identity of the owner of the money. There seems little question that this evidence, when considered collectively, gives rise to a strong suspicion, perhaps even probable cause, of *some* illegal activity. It is not quite so apparent, however, that these facts give rise to a reasonable belief, supported by more than mere suspicion, that Alvaro Freitas furnished, intended to furnish, or had received the money *in exchange for drugs.*

■ A review of pertinent authority reveals that in the context of 21 U.S.C. § 881(a)(6), other courts faced with making the probable-cause determination have been presented with stronger circumstantial evidence of narcotics activity than is present in this case. The distinguishing factor in the instant case seems to be that except for the large amount of money discovered concealed in Alvaro Freitas' car, there is little evidence linking Alvaro's possession of the money to a controlled-substance exchange. Border Patrol agents did not find drugs, and at trial the government presented no evidence indicating that Alvaro had ever been involved or was suspected of ever having been involved in narcotics transactions. Moreover, the discovery of a pipe bearing marijuana residue and rolling papers, while relevant, is certainly not as compelling as the evidence presented in the many other reported cases which disclosed that the defendants had either admitted the money's intended purpose or could be linked to narcotics transactions by testimony of past drug-related activities, more incriminating drug paraphernalia, or the discovery of actual drugs. *See $364,960 in United States Currency,* 661 F.2d at 321 (cocaine, .32 caliber pistol with an attached silencer, small envelope containing hashish, pharmacist's scales, plastic baggies bearing visible traces of cocaine, and three suitcases containing $364,960.00); *United States v. $84,000 in United States Currency,* 717 F.2d 1090, 1093, 1099–1100 (7th Cir.1983), *cert. denied, sub nom Holmes v. United States,* — U.S. —, 105 S.Ct. 131, 83 L.Ed.2d 71 (1984) (defendants found to be carrying $84,000 under clothing at airport, admitted that their baggage contained cocaine and marijuana and signed written statements indicating that the money was to be used to purchase marijuana); *United States v. $2,500 in United States Currency,* 689 F.2d 10, 16 (2d Cir.1982), *cert. denied, sub nom, Aponte v. United States,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984) (defendant found with $2,500 cash, surveillance revealed no other apparent explanation, defendant recently sold DEA agents $16,000 worth of heroin and offered to sell more, money discovered with a notepad of recorded drug transactions); *United States v. $93,685.61 in United States Currency,* 730 F.2d 571, 572 (9th Cir.) *cert. denied, Willis v. United States,* — U.S. —, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984) (information that claimant was currently engaged in drug transactions, documents disclosing his past drug trafficking involvement, large amount of cash found in home, absence of evidence of legitimate employment, claimant's failure to file tax returns, rifles found at claimant's house); *United States v. $13,000 in United States Currency,* 733 F.2d 581, 585 (8th Cir.1984) (defendant observed at airport carrying

shoulder bag later discovered to contain $13,000 and plastic bags, tape, and rubber bands—common materials used by narcotics violators—and defendant recently placed a number of toll calls to a residence which he had frequently contacted prior to his earlier cocaine-distribution arrest).

We find that the $38,000 discovered in Alvaro Freitas' car, even when considered in conjunction with the pipe and rolling papers and Alvaro's evasiveness concerning his destination and the money's owner, is insufficient to sustain the district court's finding. As we have earlier suggested, this evidence may very well give rise to a reasonable belief that there exists a connection between the *money* seized and *some* illegal activity; here, however, the evidence gives rise only to a suspicion of a connection between the money seized and its use in a transaction for a controlled substance.

B.

August Freitas also contends that the district court erred in denying him standing to challenge the forfeiture of the money found in Alvaro's car. The district court based its standing determination on the credibility of the witnesses before it and held that August failed to demonstrate an ownership interest in the seized funds. We cannot say that its choice of credibility on this issue of fact was clearly erroneous. *Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Thus, we affirm the district court's holding that August Freitas lacked standing to challenge the forfeiture.

IV

We hold that the government failed to establish probable cause for the belief that a substantial connection existed between the money seized and its use in exchange for a controlled substance. For this reason, the judgment of the district court is reversed and remanded for entry of judgment for the claimant, Alvaro Freitas.

REVERSED AND RENDERED.