UNITED STATES of America, Plaintiff,

v.

$400,000.00 IN UNITED STATES CURRENCY, Defendant,

Raul GUZMAN–RUIZ, Counter-Plaintiff-Appellant,

v.

UNITED STATES of America, Counter-Defendant-Appellee.

No. 87–5529

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 28, 1987.

---

Ronald P. Guyer, San Antonio, Tex., for counter-plaintiff-appellant.

Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Mervyn Hamburg, Atty., Crim. Div., Appellate Section, Dept. of Justice, Washington, D.C., for counter-defendant-appellee.

Before REAVLEY, RANDALL and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Raul Guzman-Ruiz appeals the district court judgment which ordered forfeiture of $400,000 in United States currency to the United States of America for failure to declare it upon its entrance to this country from Mexico. We hold that the district court did not err in holding that the government had established probable cause for seizing the money. In addition, the fact that Guzman or his associates may have exchanged pesos for dollars and did transfer the dollars by wire before customs agents seized the money did not destroy the customs officials' authority to seize the money. We therefore affirm the district court's order of forfeiture.

I

The district court found the following facts:

1. On or about February 26, 1985, around 3:00 p.m., United States Customs Service special Agent Edward Logan observed a man he knew as Pedro Mireles-Felix in the company of an unidentified Mexican male exit the Crocker Bank, now Wells Fargo Bank, located at 723 E. San Ysidro Boulevard, San Ysidro, California. The Crocker Bank is located 200

feet from the United States-Mexican border.

2. Agent Logan thereafter entered the Bank and spoke to the Vice President and Branch Manager, Alberto Gonzalez. He was told by Mr. Gonzalez that Pedro Mireles, a customer of the Bank, had telephoned Mr. Gonzalez the previous day and informed him that a friend of Mr. Mireles' would be coming to the Bank on February 26, 1985 to wire transfer $100,000.

3. Mr. Gonzalez further stated to Agent Logan that between 10:30 a.m. and 11:00 a.m. on February 26, 1985, Pedro Mireles did come into the Bank with another man, identified as Louis Alberto Enriquez-Cordero, and stated their intention to wire transfer currency. Mireles and Enriquez-Cordero left the Bank returning around 1:00 p.m. with $400,000 in United States currency.

4. The currency was presented to the Bank in bundles, rubber banded, with various denominations in each bundle. Each bundle contained various amounts. Banks and currency exchange offices strap money together according to denomination, in multiples of $100.

5. Agent Logan also spoke to Terri Trujillo, Branch Service Manager at the subject Wells Fargo Bank. Ms. Trujillo informed Agent Logan that she had counted the currency brought into the Bank on February 26, 1985 by Messrs. Mireles and Enriquez and had arranged for the wire transfer of the currency ($400,000) to account number 336–102–8 at the First City Bank, Central Park Branch, San Antonio, Texas.

6. Ms. Trujillo informed Agent Logan that Mr. Enriquez had stated that the $400,000 had been brought into San Diego, California, from Guadalajara, Mexico, via Tijuana, Mexico, in the form of pesos and had been converted to dollars in California.

7. Ms. Trujillo further stated to Agent Logan that Mr. Enriquez informed her that the pesos had been declared at the San Ysidro Port of Entry. Enriquez-Cordero appeared nervous and ill as Trujillo spoke with him. Upon request for identification he produced a Guadalajara driver's license and border crossing card.

8. The requested wire transfer was executed.

9. Agent Logan thereafter contacted both Otay and San Ysidro Ports of Entry and determined that no Report of International Transportation of Currency or Monetary Instruments (Customs Form 4790) had been filed with the United States Customs Service at either of those Ports of Entry by or on behalf of Messrs. Enriquez or Mireles on February 26 or several days before.

10. A "lane check" by Customs officials revealed that the vehicle in which Mireles and Enriquez-Cordero left the Bank on February 26 had entered the United States at San Ysidro at 10:30 a.m. on February 26, and again on February 27.

11. Agent Logan was informed that no Report of International Transportation of Currency or Monetary Intruments in the amount of $400,000 had been filed by Raul Guzman-Ruiz, the alleged owner of account number 336–102–8 at First City Bank, Central Park Branch, San Antonio, Texas, prior to the transfer of $400,000 from San Ysidro, California to San Antonio, Texas. Two Form 4790s filed by Guzman-Ruiz at the Laredo port of entry earlier in February of 1985 were located. However, that money was used by claimant to purchase an airplane.

12. When approaching the United States border, travelers are advised that they must report monetary instruments of over $10,000 in value.

13. On or about March 4, 1985, agents of the United States Customs Service seized the respondent currency from account number 336–102–8 at the First City Bank, Central Park Branch, San Antonio, Texas.

## II

After seizing the money from Guzman's bank account, the United States filed an action to obtain judicial forfeiture of the currency under 31 U.S.C. § 5317. This

statute allows seizure and forfeiture by the United States of monetary instruments not properly declared at the border in compliance with 31 U.S.C. § 5316(a).

The district court for the Western District of Texas, San Antonio Division, tried the case. Guzman, who lives in Mexico, filed his claim through his attorney, but did not appear at the trial.

After the trial, the district court found that the United States had satisfied its initial burden of demonstrating probable cause to believe that the currency entered the United States without compliance with the reporting requirement of 31 U.S.C. § 5316. The court also held that Guzman had not satisfied the burden which then shifted to him: to show by a preponderance of the evidence that the property was not subject to forfeiture. The court stated that Guzman had offered no evidence either that the currency was reported or that it was exempt from the reporting requirements. Thus, the district court ordered the money forfeited to the United States.

Guzman requested a remittitur, which the court denied. He then appealed.

## III

On appeal, Guzman raises the issues of whether the court had *in rem* jurisdiction over the $400,000 in his bank account when it was not deposited in the same bills that actually crossed the United States-Mexican border; and whether sufficient evidence supported the district court's finding that the United States had probable cause for seizing the money.

### A.

■ We need not consider the intricacies of judge-made *in rem* jurisdiction, because the statute here clearly authorizes the seizure made in this case:

If a report required under section 5316 with respect to any monetary instrument is not filed ... the instrument and any interest in property, *including a deposit in a financial institution, traceable to such instrument* may be seized and forfeited to the United States Government.

31 U.S.C. § 5317(c) (emphasis supplied). The statute clearly authorizes the seizure of the $400,000 in this case, and therefore the court's possible *in rem* jurisdiction over the money absent this statute is irrelevant.

### B.

Guzman claims that the district court had insufficient evidence to support its finding of probable cause. In its finding, the district court stated:

The United States has the initial burden of demonstrating the existence of probable cause to seize the violating currency. *United States v. $38,600.00 in U.S. Currency*, 784 F.2d 694, 697 (5th Cir.1986). Probable cause is defined as a reasonable ground for belief of guilt supported by less than *prima facie* evidence but more than mere suspicion. *Id.*

Probable cause may be established by circumstantial evidence. *Id.* It may also be proven by hearsay evidence. *U.S. v. 1964 Beechcraft Baron Aircraft*, 691 F.2d 725, 728 (5th Cir.1982).

The United States has established probable cause to believe that the respondent currency was transported into the United States without compliance with the reporting requirement of 31 U.S.C. § 5316.

Enriquez-Cordero explicitly stated to a Crocker Bank official that the money, while in the form of pesos, had been brought into the United States from Mexico and reported at the San Ysidro border. However, no report at either San Ysidro or nearby Otay was located by Customs officials in the name of Mireles, Enriquez-Cordero, Guzman-Ruiz or several of their aliases. Nor has claimant offered any evidence of compliance with Section 5316. Enriquez-Cordero's statement, the lack of evidence of any completed report, Enriquez-Cordero's foreign residency, the crossing of the Mireles vehicle into the United States immediately prior to the first visit to the Bank on February 26, and finally Enriquez-Cordero's nervousness while the currency was being counted establish

probable cause that the required report was not made at the time of the seizure.

Once the government establishes probable cause to believe the defendant property was involved in the unlawful activity, the burden of proof shifts and forfeiture is proper unless a party with standing proves a defense by a preponderance of the evidence. 19 U.S.C. § 1615.

In his argument on this issue, Guzman does not take account of these standards. Thus, he argues that there is no direct evidence of currency passing the border, when circumstantial evidence is enough to establish probable cause. He argues that he lawfully brought $500,000 into this country during previous years. This fact is not probative of whether probable cause was established in this instance. He then argues that the government did not prove that pesos had passed the border at all, or if they had, that they had passed illegally, or the amount of the pesos. Again, Guzman ignores the standard that the government must meet. The government need not "prove" its case so long as it establishes probable cause. The district court's findings in this case establish the basis for probable cause, and those findings are grounded in the evidence. Thus, the court did not err in finding probable cause. The district court correctly found that the burden shifted to Guzman who presented no evidence to satisfy it, and he does not challenge this finding on appeal.

## IV

We hold that the district court did not err in deciding that the government had satisfied the burden of demonstrating probable cause to believe that the equivalent of $400,000 in United States currency passed the border without the proper reports being filed. That the actual bills crossing the border were not the same ones seized from Guzman's San Antonio account did not destroy the customs agents' authority to seize the money when the credit in Guzman's account had been exchanged for those original bills. The judgment of the district court is therefore

AFFIRMED.