684 F.Supp. 1026 (1988)
UNITED STATES of America, Plaintiff,
v.
THREE THOUSAND FIVE HUNDRED FIFTY DOLLARS ($3,550.00), Defendant.
No. 87-0576C(3).
United States District Court, E.D. Missouri.
March 14, 1988.
*1027 Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.
Leo N. Griffard, Jr., Casey & Meyerkord, St. Louis, Mo., Howard Schainker, Los Angeles, Cal., for defendant.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court to determine the merits of plaintiff's claim after a half-day trial before the Court sitting without a jury.
Pursuant to 28 U.S.C. § 1355 and 21 U.S.C. § 881(a)(6), plaintiff seeks forfeiture and condemnation of United States currency in the amount of $3,550.00 from the claimant, John J. Vitale.
Following a consensual search of a car incidental to the arrest of claimant, troopers of the Missouri State Highway Patrol seized, among other things, currency in the amount of $3,550.00. The claimant now seeks recovery of that money, costs, and attorney's fees.
This Court, after having seen and heard the witnesses; and having considered the pleadings, exhibit, stipulation, and memoranda, makes and enters the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

Findings of Fact
1. Claimant, John J. Vitale, resides at 1600 Kraft in the City of St. Louis, Missouri, within this judicial district.
2. In 1983, claimant Vitale was convicted by a jury in this district on two counts relating to the intentional distribution of cocaine, a Schedule II narcotic drug. On March 18, 1983, Vitale was sentenced by Judge James H. Meredith to the custody of the Attorney General for a period of ten years, to be followed by a special parole term of ten years.
3. In June 1986, Task Force Detective Gregory Shepard travelled to the federal penitentiary in Marion, Illinois, where he spoke with an inmate named Charlie, who was a former police officer convicted of drug distribution. Charlie stated that another inmate, John Vitale, who was scheduled for release in August 1986, was inquiring about sources for the purchase of marijuana. Detective Shepard gave Charlie his undercover name, Gregory Horowitz, and his undercover telephone number at the Drug Enforcement Administration ("DEA") office in Clayton, Missouri. Prior to Vitale's release, his wife, Judy, telephoned Shepard at the undercover number and informed Shepard of her husband's release from prison within the next several weeks.
4. On or about August 18, 1986, claimant Vitale was released from federal prison on a "pre-release" status, and accepted at Dismas House, a half-way house.
5. Following his release, claimant Vitale telephoned Detective Shepard at the undercover number at the DEA and offered to buy up to 10,000 pounds of marijuana. Claimant Vitale wanted Detective Shepard to front him the marijuana because he had no money. Detective Shepard refused to do this, but instead stated that if Vitale could come up with a portion of the money, he would front an equal portion.
6. Numerous telephone conversations ensued between Detective Shepard and claimant Vitale from August through November 13, 1986, several of which were recorded on tape, regarding Vitale's offer to buy and Detective Shepard's offer to sell the quantities of marijuana.
7. During a telephone conversation on Thursday, November 6, 1986, claimant Vitale told Detective Shepard that he had money for the purchase of some marijuana. Detective Shepard told Vitale to telephone him over the weekend to finalize the transaction. Detective Shepard stated that the price per pound of marijuana would be $950, and that he had approximately 112 pounds. At that time, no time and place for the sale was arranged.
8. Two days later, on November 8, 1986, at about 11:30 a.m., Trooper S.R. Akridge of the Missouri State Highway Patrol stopped John J. Vitale for a speeding violation on westbound U.S. Highway *1028 40 in St. Louis County. Vitale consented to a search of the vehicle in which he was driving, a 1984 Pontiac Grand Prix, titled in the name of his wife, Judy Vitale.
9. Trooper Akridge and Missouri Highway Patrol Sergeant R.L. Rehmeier, found $3,550.00 in the console between the front seats of the vehicle. Two sealed envelopes contained $1,700.00 and $900.00 respectively, and $950.00 was loose in the console. Also found on the front floor boards were seeds and green vegetation which appeared to be marijuana. Field tests on the suspected marijuana were negative.
10. The Missouri State Highway Patrol did, by virtue of authority conferred upon them by law, seize the defendant money for and on behalf of the plaintiff by taking same into their possession and control in St. Louis County, Missouri. The seizure occurred upon land.
11. Sergeant Rehmeier asked Vitale if the money was his, to which Vitale responded that it was a friend's. Sergeant Rehmeier again asked Vitale the same question, to which Vitale responded that it was his money. Vitale stated that it was a violation of his parole not to report all earned income and that is why he did not initially claim the money.
12. The passenger in Vitale's vehicle was Richard Blake, who was believed to have a conviction for distribution of cocaine.
13. Both Vitale and Blake were arrested and conveyed, along with the vehicle, to Troop C Headquarters.
14. At Troop C Headquarters, Vitale as advised of his Miranda rights and was interviewed by Missouri State Highway Patrol Trooper W.L. Conway.
15. When asked by Trooper Conway where the money was obtained, Vitale stated that he earned the money from different odd jobs. The odd jobs included reroofing a house and cutting down trees. Vitale further stated that he could not remember specifically the names and addresses of where he performed the work.
16. Vitale stated to Trooper Conway that he kept the money in the car instead of at home or at a bank because he did not want his wife to know about it, and he did not want to pay taxes on it, nor did he want his probation officer to know about it.
17. After the interview, Vitale's car was released to him on the advice of Detective Spiess of the DEA.
18. Approximately one week after the interview, Vitale provided six contracts to Trooper Conway representing the work he had performed. Thereafter, by talking to the customers of claimant, Trooper Conway verified that the work was done and that claimant had been paid in cash. The contract dates ranged from August 20 to November 1, 1986.
19. On or about November 11, 1986, Detective Shepard had a conversation with Vitale in which Vitale conveyed a lack of interest in consummating a marijuana purchase.
20. Detective Shepard acknowledged that no details had ever been finalized as to date, time, place, the specific quantity of drugs, or total amount of money regarding the proposed marijuana purchase.
21. Claimant Vitale was not charged with a narcotics violation arising from this incident.
22. Claimant Vitale's speeding charge was reduced to a non-moving violation.
23. Since the adoption of the seizure by Special Agents of the Drug Enforcement Administration on January 15, 1987, the defendant money has been in the possession of Kenneth G. Cloud, Special Agent-in-Charge, Drug Enforcement Administration, 7911 Forsyth, Suite 500, Clayton, Missouri.

Conclusions of Law
1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1355. The United States seeks forfeiture under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance, ... all proceeds traceable to such an exchange, and all money ... used or intended to be used to facilitate any violation of this subchapter...."
*1029 2. Under 19 U.S.C. § 1615, made applicable to this action by 21 U.S.C. § 881(d), the government has the initial burden of showing probable cause for the institution of the forfeiture suit. United States v. One 1976 Ford F-150 Pickup VIN F14YUBO3797, 769 F.2d 525, 527 (8th Cir. 1985); United States v. Thirteen Thousand Dollars in United States Currency, 733 F.2d 581, 584 (8th Cir.1984); United States v. Twenty-Two Thousand Two Hundred and Eighty Seven Dollars in United States Currency, 709 F.2d 442, 446 (6th Cir.1983). More specifically, the government must show probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance. United States v. Three Hundred Sixty-Four Thousand Nine Hundred and Sixty Dollars in United States Currency, 661 F.2d 319, 323 (5th Cir.1981).[1]
3. Upon the government's showing of probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that the property was not used in violation of law. Thirteen Thousand Dollars, supra, 733 F.2d at 584; Twenty-Two Thousand Two Hundred and Eighty-Seven Dollars, supra, 709 F.2d at 446.
4. The government contends that the defendant money was "intended to be furnished ... in exchange for a controlled substance" or was "intended to be used to facilitate" a drug transaction. 21 U.S.C. § 881. The government concedes that the money was not the proceeds of a drug transaction as there is a legitimate source of the money. The money was obtained from odd jobs.
5. The claimant asserts that the government failed to show probable cause for forfeiture of the money  that is, the government failed to show that a substantial connection existed between the money and the exchange for a controlled substance. In this assertion, this Court agrees with the claimant.
6. The government's case is based on claimant's prior drug conviction and his intention to purchase a large quantity of marijuana.
7. The record is scant of evidence connecting the claimant's money to a controlled substance exchange. Although there had been numerous conversations regarding a possible sale of marijuana between Detective Shepard and claimant, one never materialized. Detective Shepard acknowledged that no details had ever been finalized as to the date, time, place, total quantity of drugs, or the total amount of money (the amount charged per pound of marijuana was known) regarding a possible purchase of marijuana. Furthermore, claimant was not prosecuted for any narcotics violations arising from the November 8, 1986, incident. No narcotics were found in the Grand Prix.
8. Mere suspicion will not suffice to support forfeiture. One 1976 Ford F-150 Pickup VIN F14YUBO3797, supra, 769 F.2d at 527. Moreover, "[f]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law." United States v. One Ford Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939).
9. In United States v. Thirty-Eight Thousand Six Hundred Dollars in U.S. Currency, 784 F.2d 694 (5th Cir.1986), border *1030 patrol agents seized during a warrantless search the following items: $38,600.00 found underneath the back seat in the claimant's automobile, a pipe bearing marijuana residue, cigarette rolling papers, scissors, and a small metal box. Id. at 696. When the claimant's vehicle was stopped, the agent questioned the claimant, and the agent smelled the odor of marijuana emanating from inside the car. Id. In addition, the claimant gave evasive and inconsistent answers when responding to questions concerning his destination and the identity of the owner of the money. Id. The Fifth Circuit, however, ruled that the evidence did not establish probable cause for belief that a substantial connection existed between the seized money and its exchange for a controlled substance so as to warrant forfeiture. Id. at 694. That case denying forfeiture has a more significant link to drug trafficking than the present case before this Court.
10. The evidence adduced at the trial failed to support a conclusion that the money was intended to be used to facilitate a drug transaction or was money intended to be furnished in exchange for a controlled substance. This Court finds that the government failed to establish probable cause for a belief that a substantial connection existed between the seized money and its exchange for a controlled substance. Therefore, for the reasons set forth above, this Court denies forfeiture of the defendant currency and orders the return of the money to the claimant.
Claimant's request for attorney's fees will remain under consideration.

ORDER
A memorandum dated this day is hereby incorporated into and made a part of this order.
IT IS HEREBY ORDERED that plaintiff's request for forfeiture is denied.
IT IS HEREBY FURTHER ORDERED that plaintiff deliver the defendant money to the claimant, John J. Vitale.
IT IS HEREBY FURTHER ORDERED that the costs of this action are taxed against the plaintiff. 28 U.S.C. § 2412.
IT IS HEREBY FURTHER ORDERED that the bond posted by claimant in the amount of $355.00 be returned to claimant.
IT IS HEREBY FURTHER ORDERED that claimant's request for attorney's fees remains under consideration. On or before April 8, 1988, claimant shall file an itemized statement of attorney's fees for services rendered and a brief in support of his request for attorney's fees. Plaintiff is directed to respond to claimant's request for attorney's fees on or before April 18, 1988.
NOTES
[1] In United States v. One 1976 Ford F-150 Pickup VIN F14YUBO3797, 769 F.2d 525, 527 (8th Cir.1985), the Eighth Circuit held that the government failed to show that a truck observed at a marijuana field facilitated the illegal activity or was otherwise "substantially associated" with the marijuana farm. The court cited other cases which stated the requirement somewhat differently. United States v. One 1972 Chevrolet Corvette, 625 F.2d 1026, 1029 (1st Cir.1980) (must be "substantial connection between the property and the underlying criminal activity"); United States v. One 1974 Cadillac Eldorado, 575 F.2d 344, 345 (2d Cir.1978) (must be sufficient nexus between vehicle and illegal activity). This Court does not ascribe any significance to the differences among these various verbal formulations; each standard is the same. The connection between the item to be forfeited and the illegal activity must be a connection of substance. But see United States v. One 1978 Mercedes Benz, 711 F.2d 1297, 1303-04 (5th Cir. 1983) (government must show only if the property was used in any manner to facilitate sale of controlled substance).