# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-01638-SCT

*JAMES EVANS, JR.*

*v.*

*CITY OF ABERDEEN, MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 6/25/2003 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | J. DUDLEY WILLIAMS |
| ATTORNEY FOR APPELLEE: | ROBERT H. FAULKS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.  THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS REVERSED AND RENDERED - 03/30/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case involves a civil forfeiture action by Appellee, the City of Aberdeen ("City"), in the Monroe County Circuit Court.  The judgment ordered that $7,600 in cash be forfeited, holding the City met its burden of proof that the cash was furnished in exchange for a controlled substance and/or used or intended to be used in violation of the Uniform Controlled Substances Law.

¶2. James Evans, Jr. ("Evans") filed a Notice of Appeal to this Court. On April 26, 2005, the Mississippi Court of Appeals reversed and rendered decision against the City. *Evans v. City of Aberdeen*, No. 2003-CA-01638-COA, 2005 WL 949448, at *6 (Miss. App. Apr. 26, 2005). As a result, the City filed a motion for rehearing. The Court of Appeals denied the motion.

¶3. The City submits this Petition for Writ of Certiorari contending that the Court of Appeals rendered a decision in conflict with the prior decisions of this Court and the Court of Appeals. We reject the "currency contamination theory" as adopted by the Court of Appeals. Instead, we adopt the 7th Circuit Court decision in *United States of America v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670)*, 403 F.3d 448 (7th Cir. 2005). However, we find the "dog sniff test" conducted here was contaminated, thus improper. We agree with the Court of Appeals' holding that the City failed to meet its burden of proof that the $7,600 was subject to forfeiture.

## FACTUAL BACKGROUND

¶4. The Mississippi Court of Appeals stated the facts of this case in detail. Finding no need to restate them, we direct the reader to *Evans*, 2005 WL 949448, at *1-2. On appeal, the Court of Appeals reversed the trial court's judgment holding that the trial court improperly identified the objects seized from Evans' room as drug distributing and/or manufacturing paraphernalia. *Id*. at *4. As such, the Court of Appeals found the evidentiary presumption that cash seized in close proximity to drug distributing and/or manufacturing paraphernalia can be subject to forfeiture did not apply. *Id*.

2

**ISSUE**

I.     **WHETHER UNDER MISS. CODE ANN. SECTION 41-29-179(2), THE CITY PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT THE $7,600 FOUND IN THE EVANS' HOME IS SUBJECT TO FORFEITURE**

**STANDARD OF REVIEW**

¶5.     The Court of Appeals cited the following standard of review:

> Forfeiture statutes are penal in nature and must be strictly construed. *Parcel Real Property Located at 335 West Ash Street, Jackson, Miss. v. City of Jackson,* 664 So.2d 194, 199 (Miss.1995); *Jackson v. State ex rel. Miss. Bureau of Narcotics,* 591 So.2d 820, 822 (Miss.1991). In a civil forfeiture case, the question is whether, given all of the evidence taken together, a rational trier of fact could have found that the funds were the product of or the instrumentalities of violations of the State's Uniform Controlled Substances Laws. *Hickman v. State ex. rel. Miss. Dep't of Public Safety,* 592 So.2d 44, 48 (Miss.1991). The trier of fact may act on circumstantial evidence and inferences as well as direct evidence. *Id.* at 46.

*Evans*, 2005 WL 949448, at *2.

**ANALYSIS**

¶6.     The Court of Appeals found the presumption that currency found in close proximity to manufacturing or distributing paraphernalia under Miss. Code Ann. section 41-29-153(a)(7) does not apply. The City does not contest this finding on appeal; as such, this Court will not address that issue. However, the City argues the Court of Appeals improperly utilized a divide-and-conquer approach to specific items of probative evidence; specifically, that the Court of Appeals incorrectly adopted a "currency contamination theory," improperly dismissed expert testimony because the City failed to qualify the expert, improperly dismissed evidence that the $7,600 was a large amount of money for Evans to have legally

3

accumulated, and improperly applied a Fifth Circuit case to support its decision. Under the controlling statute, section 41-29-179(2), the petitioner must prove by a preponderance of the evidence that the property is subject to forfeiture.

### A. Currency Contamination Theory

¶7. The trial court found evidence that a drug dog alert to a presence of drugs on the $7,600 was probative in its finding that the cash was subject to forfeiture. However, the Court of Appeals applied a currency contamination theory to discredit this evidence. This theory holds: "there is some indication that residue from narcotics contaminates as much as 96% of the currency currently in circulation." *Evans*, 2005 WL 949448, at \*5 (quoting *United States. v. $5,000.00 in U.S. Currency*, 40 F.3d 846, 849 (6th Cir. 1994)).

¶8. The City argues the Court of Appeals' finding is improper and cites to the First, Third, Seventh, Eighth, Ninth, and Eleventh federal circuits which reject such a currency contamination theory. *See Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670)*, 403 F.3d at 460 ("We therefore conclude that the empirical information provided in this case indicates that dog alerts to currency should be entitled to probative weight."); *United States. v. $84,615 in U.S. Currency*, 379 F.3d 496, 502 (8th Cir. 2004)(dog's alert to currency provides some-albeit slight-indication that the money was connected to drug trafficking)(citing *United States v. $141,770.00 in U.S. Currency*, 157 F.3d 600, 604 (8th Cir.1998)(concluding that the dog's alert to the seized money supported the government's contention that the currency was substantially connected to illegal drugs)); *United States v. $242,484.00*, 389 F.3d 1149, 1165-66 (11th Cir. 2004)(declining to accept

the currency contamination theory and disagreeing with the district court's conclusion that the probative value of a dog alert to currency was weak, because "no one with any expertise testified in support of [the claimant's] ever-lasting scent, global contamination theory."); *United States v. Saccoccia*, 58 F.3d 754, 777 (1st Cir. 1995)("Even though widespread contamination of currency plainly lessens the impact of dog-sniff evidence, a trained dog's alert still retains some probative value."); *United States v. Golb*, 69 F.3d 1417, 1428 (9th Cir. 1995)(holding that the trial court did not abuse its discretion in admitting evidence of currency dog sniffs); *United States v. Carr*, 25 F.3d 1194, 1203 (3d Cir. 1994)("[W]e consider the dog alert evidence as only another piece of evidence tending to show that [the defendants] knew that the money involved in the conspiracy was derived from illegal drug trafficking.").

¶9.     Neither this Court nor the Fifth Circuit Court of Appeals has addressed this issue. It is therefore first impression for this Court.  In *Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670)*, 403 F.3d at 455-60, the Seventh Circuit discussed in detail whether dog alerts to currency are entitled to any probative weight.

¶10.    There, the defendant argued that dog alerts were not entitled to any probative weight, alleging that most U.S. currency in circulation is tainted with cocaine. *Id*. at 455.  Instead of focusing on whether most U.S. currency is tainted with cocaine, the court turned its attention to whether the dog alerts are triggered by cocaine, or from a cocaine by-product, known as methyl benzoate. *Id*.  The court found that based on experts' extensive research on the scientific aspects of dog sniffs, the studies established to a reasonable scientific

5

certainty that methyl benzoate, as opposed to the cocaine itself, triggers dog alerts to currency. *Id*. at 457-58. Moreover, the court found "methyl benzoate is highly volatile and evaporates at an exponential rate from tainted currency, so currency recently exposed to cocaine and returned to general circulation will quickly lose any detectable odor of methyl benzoate, even if the particles of cocaine remain." *Id*. at 458. As such, the court found that narcotic dogs will alert to currency "only if it has been exposed to large amounts of illicit cocaine within the very recent past," thus making properly trained narcotic dog alerts to currency entitled to probative weight. *Id*. at 459.

¶11. We find the Seventh Circuit's discussion informative, logical, and persuasive. Therefore, based on the Seventh Circuit's in depth analysis of the reliability of dog alerts to currency,[1] we adopt the Seventh Circuit's sound reasoning and finding that dog alerts to currency are entitled to probative weight. Likewise, we also reverse the Court of Appeal's finding that the currency contamination theory precludes evidence of a dog alert unless coupled with other persuasive evidence.

¶12. However, although we find dog sniffs are entitled to probative weight, the circumstances surrounding the dog sniff in the case at bar presents the issue of whether the City conducted a proper dog-sniff test on the currency. Officer Perkins testified that prior to the test, he placed the money in a brown paper bag which he found lying in the police stations' basement. He also admitted the bag may have been contaminated, and he was not

---

[1]For a detailed discussion of Seventh Circuit's analysis of the reliability of narcotic dog detection alerts to currency, see *Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670)*, 403 F.3d at 455-60.

sure whether the dog hit on the paper bag or on the money. Likewise, Officer Perkins admitted the testing area may have been contaminated, and that the dog could have alerted to the area where he placed the bag instead of to the money itself. It is essential that a proper test be administered. We can not so find in the case at bar.

B. Expert Testimony

¶13. The City argues the Court of Appeals improperly dismissed Officer Perkins' testimony when making its decision, finding that the City failed to qualify him as an expert witness during trial. This Court repeatedly has held that in order to preserve error for appellate review, a contemporaneous objection must be made, and if no objection is made, the appellant waives the error. *Mallard v. State*, 798 So. 2d 539 (Miss. 2001); *Smith v. State*, 530 So. 2d 155, 161-62 (Miss. 1988). Because Evans made no objection at the trial court level to the City's failure to qualify their witness, Evans waived the issue. The Court of Appeals, therefore, improperly excluded Officer Perkin's testimony from its decision concerning the circumstances surrounding the items found in Evans' room.

C. $7,600

¶14. The City argues the Court of Appeals improperly held the $7,600 was not subject to forfeiture because direct evidence of drug activity did not exist. *Evans*, 2005 WL 949448, at *5. The City argues that direct evidence is not required; instead, the trier of fact may take into consideration circumstantial evidence as well as direct evidence. *See Hickman v. State*, 592 So. 2d 44, 45 (Miss 1991). Specifically, the City argues under *Jackson* a large amount

7

of cash, without any credible explanation, should be considered probative as evidence of drug trafficking.

¶15.   In *Jackson v. State*, 591 So. 2d 820, 822-23 (Miss. 1991), this Court upheld a forfeiture of $1,087 where authorities caught the defendant in a sting operation with fake cocaine and the $1,087 on his person.  In reaching our decision, this Court cited to *United States v. Three Hundred Sixty-Four Thousand Nine Hundred Sixty Dollars in U.S. Currency*, 661 F.2d 319 (5th Cir. Unit B 1981) (hereinafter "*$364,960*").  There, authorities found $364,960 in cash along with cocaine, hashish, guns, a scale, and five glassine bags containing cocaine residue.  *Id*. at 324.  The Fifth Circuit held "[f]rom the sheer quantity of currency seized under *these circumstances*, a court may permissibly infer a connection with illegal narcotics trafficking."  *Id*. (emphasis added).

¶16.   In the case at bar, police officers found $7,600 of currency wrapped in hair bands underneath a console television in Evans' bedroom.  Furthermore, the police found a brass container containing a brillo pad, ashes, and residue; a piece of tin foil with holes in it; a cigarette pack with residue; and some plastic bags.  Officer Perkins testified that the brass container was "used to make [a] crack pipe or [was] being used to make a crack pipe."; that the tin foil with holes in it "would indicate somebody ha[d] been using that to smoke crack cocaine with."; and that the plastic bags "indicate[d] the transport or storage of drugs." However, Evans testified that he used the brass container and tin foil not for illegal drug use, but instead as ashtrays for smoking cigars.  As to the plastic bags the officers found in a drawer, Evans testified his room served as a guest and storage room before he occupied it,

because along with the plastic bags were screwdrivers, pictures, and records in other drawers. More importantly, we note the officers did not find drugs in Evans' home, nor did the officers send the brass container, tin foil, and cigarette pack residue to a crime lab for drug testing. Therefore, there is no evidence whatsoever of the presence of illegal drugs in any form including residue.

¶17. Based on the facts in the case at bar, applying both *Jackson* and *$364,960*, we find the Court of Appeals was correct in determining that the trial court cannot infer that the $7,600 seized in connection with a brass container, a brillo pad, burnt tin foil, and a cigarette pack, without more, was connected with illegal narcotics trafficking.

      D. *United States v. $38,600.00 in U.S. Currency*

¶18. The Court of Appeals cited *United States v. $38,600.00 in U.S. Currency*, 784 F. 2d 694 (5th Cir. 1986) (hereinafter "*$38,600.00*") in support of its decision to deny forfeiture of the $7,600. In *$38,600.00*, border patrol agents found a blue bag located on the driver's back seat containing a pipe bearing marijuana residue, cigarette rolling papers, scissors, and a small metal box. *Id*. at 696. The agents also found $38,600 in cash concealed underneath the back seat. *Id*. The agents seized the money after receiving evasive answers from the driver as to his destination and the money's owner. *Id*. at 696-97. The Fifth Circuit held the money was not subject to forfeiture. The Fifth Circuit stated:

> There seems little question that this evidence, when considered collectively, gives rise to a strong suspicion, perhaps even probable cause, of *some* illegal activity. It is not quite so apparent, however, that these facts give rise to a reasonable belief, supported by more than mere suspicion, that [the driver]

9

furnished, intended to furnish, or had received the money *in exchange for drugs*.

*Id.* at 698 (emphasis in original).

¶19.    Again, this Court has held that in determining whether forfeiture is appropriate, the question becomes whether "given all of the evidence considered together, a rational trier of fact may have found by a preponderance of the evidence that [the] funds were the product of or instrumentalities of violations of this state's controlled substances act." *Hickman*, 592 So.2d at 48. *See also* § 41-29-179(2).

¶20.    The City argues it presented evidence exceeding the evidence found in *$38,600.00*. The City points to several factors, including that its confidential informant, who provided true and valuable information in the past which led to the arrest of drug dealers, reported Evans and his friend Blanchard were storing crack cocaine at the Evans' home; that Evans failed to properly provide conclusive evidence of legal sources of the $7,600 found under the console television in his bedroom; and the conduct of the Evans' family following the search (installation of a security system in the Evans' home, removal of Evans from the home).

¶21.    However, we point out the police department's failure to conduct a proper dog-sniff test, the conflicting evidence as to the use of the brass container and tin foil, the failure to test the residue found in the cigarette pack and the brass container to determine whether such residue was an illegal substance, the conflicting evidence as to the source of the $7,600 cash, and that the police never found drugs in the Evans' home.  Considering the circumstances as a whole, this Court finds the City did not meet its burden proving by a preponderance of the evidence that the $7,600 is subject to forfeiture.

10

## CONCLUSION

¶22. We agree with the Court of Appeals' finding that the City did not meet its burden of proving by a preponderance of the evidence that the $7,600 found in Evans' home was subject to forfeiture. However, we reject the Court of Appeals' finding that the currency contamination theory precludes evidence of a dog alert unless coupled with other persuasive evidence. Instead, we adopt the Seventh Circuit's finding that dog alerts to currency are entitled to probative weight. Therefore, the judgment of the Court of Appeals is affirmed and the judgment of the Monroe County Circuit Court is reversed and rendered.

¶23. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS REVERSED AND RENDERED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

11