460 So.2d 115 (1984)
Jack Carlton REED
v.
STATE of Mississippi, ex rel. MISSISSIPPI BUREAU OF NARCOTICS.
No. 54323.
Supreme Court of Mississippi.
November 14, 1984.
*116 Samuel H. Wilkins, Edward Ellington, Wilkins, Ellington & James, Jackson, for appellant.
R. Steven Coleman, Jackson, John M. Montgomery, Starkville, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Jack Carlton Reed appeals from a judgment of the Circuit Court of Oktibbeha County, sitting without a jury, ordering forfeiture of seven (7) packages of $100.00 bills, twenty-four (24) loose bills of United States currency, one hundred seventy-seven (177) bills of foreign currency, and two hundred ten (210) gold Krugerrands, aggregating in excess of two hundred nineteen thousand dollars ($219,000) in value. He assigns three (3) errors in the trial below, contending: (1) that the lower court erred in ordering the seized currency and coins forfeited because the State did not meet its burden of proof; (2) sufficient probable cause did not exist to support the issuance of search warrants for Reed's suitcase and safety deposit box and to seize the items therein; and (3) the lower court erred in admitting hearsay and irrelevant evidence in the forfeiture trial. The State cross-appeals, assigning as error: (1) the lower court erred in refusing to strike Reed's answer because it was not verified as required by Mississippi Code Annotated § 41-29-179(1) (1972); and (2) Reed's failure to comply with discovery orders of the court.
We are of the opinion that the State's first cross-assignment of error should be sustained and that it is dispositive of the case. However, there are questions which should be answered in the direct appeal, and we briefly discuss them.
This case could have been taken from any number of books in the libraries and bookstores in this country, which involve intrigue, espionage, drug dealing, big-time crime, etc. The principal actor is Carlos *117 Lehder, who conducted the largest cocaine smuggling operations by air in the world.[1] His righthand man and chief confederate was Jack Carlton Reed. The operation originated in Colombia, South America, where the cocaine was accumulated and processed. Reed extended it to Norman's Cay, Bahamas, an island which Lehder bought, and upon which he established a veritable armed camp and society. Lehder had a fleet of planes which moved the cocaine from Colombia to Norman's Cay, and thence from that point into various areas of Florida for distribution over North America.
Narcotics authorities, both Federal and State, had been investigating Lehder and Reed for many years and the noose began to tighten upon them. Lehder and Reed decided that they needed a rural area outside Florida within range of their aircraft at Norman's Cay, where their Colombian pilots could land, unload the contraband, refuel and then return to Norman's Cay.
With the new plan in mind, Jack Reed, accompanied by a female companion, Michelle Brown, and a Laborador Retriever dog, went to Canada, thence to Starkville and Oktibbeha County, Mississippi. Reed's dog had a severe case of heartworms and a Canadian veterinarian advised him that Dr. Gregg Boring, a veterinarian at Mississippi State University, was one of the best specialists in that field of dog treatment. Reed arrived in Starkville for the ostensible purpose of having his dog treated by Dr. Boring. Shortly thereafter other confederates appeared upon the scene. A real estate agency was contacted and eventually, a tract of land was acquired consisting of forty-five (45) acres with a house and airplane runway on it. The cost of the property was $165,000.00 and, although the transaction was to be in cash, the purchase price was actually paid for by a check drawn on the Bank of Nova Scotia, Nassau, Bahamas.
Expert carpenters were brought in from Canada and they reconstructed the walls of the house with false storage cabinets, apparently for the purpose of storing the cocaine expected to be delivered there. Arrangements were made with a nearby farmer to keep the runway mowed. During this time, Dr. Boring had been treating Reed's Laborador Retriever successfully, resulting in a warm friendship between the two men.
As time passed, Reed and his female companion went to a local bank in Starkville, rented a lock box, and placed in the box the contents of a heavy laden briefcase. Thereafter, Reed left Starkville and he, Michelle Brown, and the dog departed via private plane. Dr. Boring agreed to take care of a blue suitcase for Reed until he returned in about three months, since there was insufficient room in the small plane for the suitcase. Reed told Dr. Boring that he desired him to resume treatments on the dog upon his return after the three-month absence.
By this time, the authorities had become suspicious, and the sheriff, the Mississippi State Bureau of Narcotics, and the Federal officers had become alerted. A search warrant was obtained to search the blue traveling bag left with Dr. Boring.[2] The bag contained many papers, photographs, names, and a small amount of cocaine. Officers next obtained a search warrant for the lock box and contents at the local bank. The search uncovered the large amount of money which is the subject of this forfeiture proceeding.
The parties were not in agreement at the time of the trial regarding what constituted the burden of proof. Prior to trial of the case sub judice and filing briefs, the case of Ervin v. State, ex rel. Mississippi Bureau of Narcotics, 434 So.2d 1324 (Miss. *118 1983), was decided. A question there concerned what burden of proof the State has under Mississippi Code Annotated § 41-29-179(2) (1972):
(2) If the owner of the property has filed a verified answer denying that the property is subject to forfeiture, then the burden is on the state to prove that the property is subject to forfeiture. However, if no answer has been filed by the owner of the property, the petition for forfeiture may be introduced into evidence and is prima facie evidence that the property is subject to forfeiture.
Ervin held that the burden of proof on the State under the above section is a preponderance of the evidence. The appellee cites the Federal forfeiture statute and forfeiture statutes of other states. However, those statutes are materially different from the Mississippi statute and it is not necessary to discuss them, especially in light of the Ervin case.
In Mississippi, the State must prove by a preponderance of the evidence that the articles to be forfeited violate Mississippi Code Annotated Section 41-29-139 (1972), which follows:
§ 41-29-139. Prohibited acts A; penalties.
(a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally:
(1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance; or
(2) To create, sell, barter, transfer, distribute, dispense or possess with intent to create, sell, barter, transfer, distribute or dispense, a counterfeit substance.
We recognize that the law does not favor forfeitures and, before forfeitures will be decreed or adjudged, they must come within the terms of the statute imposing that liability. Williams v. General Insurors, 193 Miss. 276, 7 So.2d 876 (1942); Citizens Bank v. Grigsby, 170 Miss. 655, 155 So. 684 (1934). Reed argues that he was not engaged in any illegal behavior while in Mississippi. However, he is not charged with illegal conduct in the present case, and, in order to sustain forfeiture, all the State need prove is that the seized items were possessed by Mr. Reed with intent to be used in connection with an illegal smuggling conspiracy.
In United States v. Three Hundred Sixty-Four Thousand Nine Hundred Sixty Dollars in U.S. Currency, 661 F.2d 319 (5th Cir.1981), it was held:
"To order a forfeiture based on wholly circumstantial evidence and mere inference would conflict with established principles of due process." Such conclusion was erroneous. Were it correct, a highly anomalous situation would result: circumstantial evidence would be insufficient to support forfeiture, a civil proceeding, but sufficient in and of itself in certain cases to support a criminal conviction. See United States v. Allison, 616 F.2d 779, 784 (5th Cir.1980), cert. denied, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72... .
... From the sheer quantity of currency seized under these circumstances, a court may permissibly infer a connection with illegal narcotics trafficking. In United States v. Magnano, 543 F.2d 431, 437 (2d Cir.1976), cert. denied, 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977), the Second Circuit held that possession of a large amount of cash by a defendant charged with participation in a narcotics trafficking conspiracy was relevant admissible evidence of such participation:
[T]he possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale is similar to the possession of special means, such as tools or apparatus, which is admissible to show the doing of an act requiring those means. [Quoting United States v. Tramunti, 513 F.2d 1087, 1105 (2d Cir. 1975), cert. denied, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed. 50.
661 F.2d at 324.
*119 The State's case was presented by persons who had actual knowledge of the conduct and activities of Reed. Also, cogent witnesses were produced who testified about their investigations of the Lehder-Reed operations, and, necessarily, a great part of their testimony was hearsay. Hearsay was incompetent on the issue involved. However, we are of the opinion that the competent evidence established by a preponderance the State's case of forfeiture, that there was probable cause for search of Reed's traveling bag and the lock box rented by him.

CROSS-APPEAL
The State contends on cross-appeal that the lower court erred in overruling the State's motion to strike the answer of Reed for failure to comply with Mississippi Code Annotated § 41-29-179(1) (1972), requiring a verified answer and for claimant's failure to comply with discovery orders of the court.
Mississippi Code Annotated § 13-1-237(d) (Supp. 1984), states the following:
(d) Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection.
If a party or an officer, director, or managing agent of a party or a person designated under sections 13-1-230(b)(6) or 13-1-231(a) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under section 13-1-233, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under section 13-1-234, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (A), (B), and (C) of subsection (b)(2) of this section. In lieu of any order in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
The failure to act described in this subsection may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order under section 13-1-226(c).
Reed would not appear in Mississippi for his deposition, although the State agreed to pay all of his expenses. Obviously, he was afraid that he would be subjected to criminal prosecution and would be arrested upon his appearance. The attorney for Reed did appear at all times when the depositions were set. In view of our decision on the next part of the question, it is unnecessary to state whether or not the lower court abused its discretion here.
Section 41-29-179 provides:
(2) If the owner of the property has filed a verified answer denying that the property is subject to forfeiture, then the burden is on the state to prove that the property is subject to forfeiture. However, if no answer has been filed by the owner of the property, the petition for forfeiture may be introduced into evidence and is prima facie evidence that the property is subject to forfeiture.
On the first day of trial, the State served Reed's counsel with a motion to strike the answer because it was not verified. The attorney made an oral motion for permission to carry on with the case that day and file his verified answer at a later date, and the trial judge overruled the State's motion to strike Reed's answer. Counsel never filed a verified answer, and has not stated any reason why the statute was not complied with.
The State's petition constituted a prima facie case of forfeiture. Reed put on no evidence of his own, and we are of the opinion that the statute controls. The lower *120 court should have dismissed Reed's answer and granted judgment in favor of the State. Therefore, the cross-appeal is sustained, and the judgment entered by the lower court is affirmed.
AFFIRMED ON DIRECT APPEAL AND REVERSED AND RENDERED ON CROSS-APPEAL.
PATTERSON, C.J., WALKER, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] Witnesses estimated income from the operation was far in excess of one billion dollars per year and that the Starkville, Oktibbeha County, part alone would amount to around sixty million dollars per month.
[2] Prior thereto, two men had approached Dr. Boring for the purpose of retrieving the suitcase. The men were unknown to Dr. Boring and he declined to release it to them.