ROBERTSON, Justice,
for the Court:
I.
This appeal arises from a civil action wherein the Circuit Court has ordered forfeited to the State $16,700.00 of Appellant’s money on grounds these funds had been used or were intended for use in drug trafficking in violation of this state’s controlled substances act. The State made its case through circumstantial evidence, and the question before us is whether the evidence is adequate that we should uphold the forfeiture. A troublesome mode of proof attends our inquiry. In the end, we affirm.
II.
A.
The facts are in relevant part undisputed. At approximately 4:00 a.m. on Wednesday, August 23, 1989, Troopers Billy Bris-ter and Daryl Deschamp were patrolling Interstate Highway 10 in Harrison County, Mississippi. Brister and Deschamp were traveling in an easterly direction, a mile or so west of I-10’s interchange with U.S. Highway 49, when a 1987 Chevrolet sedan approached from the rear, its lights on bright. Once the Chevrolet had passed them, Brister and Deschamp pulled in be *45 hind it and signaled with their for the driver to pull over.[1] They found Earl Dewayne Hathcoek, age 26, driving the vehicle, with Billy Dale Hickman, age 27, asleep on the back seat. “blue light’
A loaded .38 Smith & Wesson handgun was lying in plain view on the front seat to Hathcock’s right. In the trunk of the car the officers found a pair of cowboy boots. They could see protruding from one boot a Crown Royal velvet bag which contained a large amount of United States currency, later determined to be $16,700.00, mostly in fifty ($50.00) and twenty ($20.00) dollar denominations. Within Hickman’s black suitcase or clothes bag they found three large plastic Ziploc bags, inside two of which “marijuana gleanings” were found. Also found in the trunk were two spare tires, one a small “fifty mile an hour tire” and the other a regular size tire which was “broken down,” that is, not mounted but loose around the rim, not “aired up.” The search also produced two rolls of gray duct tape. Back inside the automobile the officers found in Hathcock’s luggage two small cigarettes containing 1.2 grams of marijuana, rolling papers and a “roach” clip.[2] A second loaded pistol was discovered on the floor on the right side of the front seat covered by a white towel.
Troopers Brister and Deschamp determined that Hickman and Hathcoek had left Charlotte, North Carolina, on the preceding Wednesday, August 18, 1989, had driven to Central Florida, and then to Houston, Texas, ostensibly to buy a used Corvette. They were on their return trip from Houston when they were arrested and detained.
Documentary evidence reflected that Hickman and Hathcoek checked into the Hotel Concord in Houston on August 19, 1989, and stayed for one night. Their bill from the Hotel Concord reflects more than twenty long-distance telephone calls, fifteen to points in Florida with the same area code as Jacksonville. They stayed in Houston several more days at another motel.
B.
The State of Mississippi, on September 21, 1989, commenced this civil action by filing its complaint in rem in the Circuit Court of the First Judicial District of Harrison County, Mississippi. In the complaint, the State alleged that the $16,700.00 cash seized incident to the search had been used or was intended for use in violation of the Mississippi Uniform Controlled Substances Law and was found in close proximity to a forfeitable controlled substance, to-wit: marijuana, and that these funds should be forfeited to the State. Miss.Code Ann. §§ 41-29-153(a), -179(4) and -181(2) (Supp. 1989).
Hickman answered and claimed the property. Hickman and Hathcoek both testified at trial but told tales that could only raise suspicion. They said they left Charlotte en route to Houston but somehow while in Alabama missed an exit and wound up in Jacksonville, Florida, before arighting their course and setting sail for Houston on I-10. The Circuit Court found:
The testimony of these two individuals is incredible and I don’t believe what they’re saying.
The Court then recited conflicts and other vagaries of their stories and concluded Hickman and Hathcoek were liars who
simply ... didn’t get their stories straight before they got on the witness stand.
After all was said and done, the Circuit Court found that the evidence established “by a preponderance of the evidence” that the $16,700.00 in U.S. currency was subject to seizure and forfeiture and ordered that the same be forfeited to the State of Mississippi to be used and disposed of according to law. Miss.Code Ann. §§ 41-29-153, -185 (Supp.1989).
Hickman now appeals to this Court.
III.
This is not a criminal prosecution. It is a forfeiture proceeding. Mississippi *46 law requires that in such a proceeding the State prove all facts requisite to the forfeiture by “a preponderance of the evidence.” Miss.Code Ann. § 41-29-179(2) (Supp.1989); Saik v. State ex rel. Mississippi Bureau of Narcotics, 473 So.2d 188, 191 (Miss.1985); Reed v. State ex rel. Mississippi Bureau of Narcotics, 460 So.2d 115, 117 (Miss.1984); Ervin v. State ex rel. Mississippi Bureau of Narcotics, 434 So.2d 1324, 1326 (Miss.1983). This is hardly extraordinary, as our courts daily adjudge claims to and defenses of far greater sums by the preponderance standard. As in any civil action, the trier of facts may act on circumstantial as well as direct evidence, Reed, 460 So.2d at 118; United States v. Three Hundred Sixty-four Thousand Nine Hundred Sixty Dollars in U.S. Currency, 661 F.2d 319, 324 (5th Cir.1981); United States v. One 1987 Mercedes 560 SEL, 919 F.2d 327, 331 (5th Cir.1990); United States v. $38,600.00 in U.S. Currency, 784 F.2d 694, 697 (5th Cir.1986), and, in the end, confronts the question, whether the evidence preponderates in the plaintiffs favor, that is, produces rational belief that the factual predicates of the plaintiffs claims are more likely true than not. See, Mississippi Model Jury Instructions — Civil and Criminal § C.06 (1977).
Here the Circuit Court found for the State and by this standard. Our scope of review is the familiar substantial evi-denee/clearly erroneous test. McClendon v. State, 539 So.2d 1375, 1377 (Miss.1989); Leatherwood v. State, 539 So.2d 1378, 1387 (Miss.1989); Right v. Sheppard Building Supply, Inc., 537 So.2d 1355, 1358 (Miss.1989). The question is not how we would have resolved the evidentiary and ultimate fact disputes had we been the triers of fact, but whether, given the record, a reasonable fact-finder may have done as was done. This standard substantially limits appellate review of the facts, save only where the circuit court has applied an erroneous legal standard to decide the question of fact. McClendon, 539 So.2d at 1377; Leatherwood, 539 So.2d at 1387.
IV.
By law forfeiture is a function of illegal drug trafficking, and we must define the latter before we consider what the state may seize. Miss.Code Ann. § 41-29-139(a)(1) (Supp.1989) provides in part:
(a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally:
(1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute, or dispense, a controlled substance; ....
Marijuana is a “controlled substance.” Miss.Code Ann. § 41-29-113(c)(12) (Supp. 1989). A subsequent statute, Miss.Code Ann. § 41-29-153 (Supp.1989), declares subject to forfeiture instrumentalities of the sale, barter, transfer, manufacture, distribution, or dispensing of marijuana in whole or in part in this state,[3] to-wit:
(a) The following are subject to forfeiture:
[[Image here]]
(5) All money ... which [is] used, or intended for use, in violation of this article; [4]
[[Image here]]
(7) Everything of value, ..., furnished, or intended to be furnished, in exchange for a controlled substance in violation of this article, all proceeds traceable to such an exchange, and all moneys ... and other things of value used, or intended to be used, to facilitate any violation of this article....
The substantive standards before us, our question becomes whether the evidence is such that the Circuit Court may fairly have *47 found that the $16,700.00 was the product of or was intended for use in connection with narcotics transactions contrary to this state’s laws. It is important to keep in mind that the Court had no authority to order Hickman’s money forfeited because he took the witness stand and lied. This is not a perjury prosecution. Nor can the state take his money because the proof powerfully suggests he and Hathcock were certainly “up to something.”
Central to the State’s case is the testimony of Sam Owens, twelve years an employee of the Mississippi Bureau of Narcotics (MBN). Owens was tendered and accepted, by reason of his training and experience, as an expert on the behavior of narcotics violators and traffickers. Of importance, Owens was not asked his opinion on the ultimate issue, were these funds the product of drug trafficking? Nor was he asked whether Hickman fit a drug courier profile. Owens was asked a number of questions regarding the items of evidence found in the Chevrolet sedan in the early morning hours of August 23, 1989, and whether in his experience it suggested narcotics trafficking, and his answers (with but a lone formal objection) were:
(a) The Crown Royal bag: “Not uncommon ... to have within it drugs and cash.”
(b) Ziploc plastic bags: “Commonly used to package marijuana and other drugs.”
(c) Duct tape:[5] “Commonly used to wrap packaging which may contain marijuana or cocaine.”
(d) $16,700.00 in mostly twenty ($20.00) and fifty ($50.00) dollar denominations: “Very commonplace to see the twenty dollar and fifty dollar denominations used in drug trafficking.”
(e) Two spare tires: “Commonly used to conceal or contain quantities of contraband drugs or U.S. currency.”
We approach such testimony with caution.[6] It is not unlike drug courier profiles that have vexed the courts of our sister states, see, e.g., Cresswell v. State, 564 So.2d 480 (Fla.1990); State v. Johnson, 561 So.2d 1139 (Fla.1990); In re Forfeiture of $6,003.00 in U.S. Currency, 505 So.2d 668 (Fla.App.1987), not to mention our federal courts. See United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); and McCray v. State, 486 So.2d 1247, 1250, 1252 (Miss.1986) (circumstantial “profile” evidence sufficient as probable cause for search but legally insufficient as proof beyond a reasonable doubt of guilt on conspiracy charge; but see, Hall v. State, 455 So.2d 1303, 1306-07 (Miss.1984) (drug courier profile “insufficient probable cause when standing alone for an arrest or search” but may be considered in combination with other evidence). We are torn between the imperative for effective detection and prosecution of drug traffickers and the certainty that the profile approach will net some, if not many, who are inno *48 cent. That concern so present at the stage of initial detention is exacerbated on final forfeiture.[7] Cf McCray v. State, supra.
The Circuit Court showed its sensitivity to this dilemma when it recognized
loaded weapons, empty pound bags, baggies with residues of marijuana in them, duct tape, any one of these items taken alone would certainly not be such that would lead one to the inevitable belief that these were the matters used in handling narcotics,....
The question, however, is whether, given all of the evidence considered together, a rational trier of fact may have found by a preponderance of the evidence that Hickman’s funds were the product of or instru-mentalities of violations of this state’s controlled substances act. The Circuit Court said
taking them altogether certainly circumstantially leads one to the inevitable belief that the State has met its burden of proof by a preponderance of the evidence through circumstances and through these various items.... So the long and the short of it is that the Court makes a finding that the State has met its burden of proof and that the evidence and explanation is far lacking in showing that these funds were for any other purpose than those of carrying out the sale or transportation of illegal drugs within the forfeiture ... statute.
We find in the record substantial, credible, relevant evidence from which the Circuit Court may have so found. We certainly cannot say that Court’s findings are clearly erroneous. See Reed v. State ex rel. Mississippi Bureau of Narcotics, 460 So.2d 115, 119 (Miss.1984).
Hickman presents two further issues, but neither merits discussion nor reversal. Cf. McQuarter v. State, 574 So.2d 685, 688 (Miss.1990); Turner v. State, 578 So.2d 1340, 1343 (Miss.1990); Ponthieux v. State, 532 So.2d 1239, 1248 (Miss.1988); Morea v. State, 329 So.2d 527 (Miss.1976).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, PITTMAN and McRAE, JJ., concur.
BANKS, J., dissents with written opinion, joined by DAN M. LEE, P.J., and SULLIVAN, J.

. The legality of the detention and subsequent search are not challenged, and we express no opinion thereon.

. Without dispute, these were "personal use” items, belonging to Hathcoek, unconnected with the funds forfeiture of which is at issue here.

. Hickman makes no claim that he did not in (whole or in part in) this state violate Section 139(a). Nothing said here addresses the question whether our forfeiture statute reaches funds emanating from, or intended for use in, illegal drug transactions committed or to be committed wholly outside this state, merely because a drug trafficker transports those funds through or across this state.

. "Article" refers to the entire Mississippi Uniform Controlled Substances Act. Miss.Code Ann. §§ 41-29-101, et seq. (Supp.1989).

. See Vickery v. State, 535 So.2d 1371, 1381 (Miss.1988) (Prather, J., dissenting) ("The air conditioning vents in the apartment had been covered with duct tape.”); Rooks v. State, 529 So.2d 546, 549 (Miss.1988) ("The officers found two black garbage bags with duct tape around them containing marijuana.”).

. The State cites language from Section 41-29-153(a)(7) to the effect that
All moneys, coin and currency found in close proximity to ... forfeitable drug ... distributing paraphernalia ... are [rebuttably] presumed to be forfeitable under this paragraph.
The State says the spare tires, the Crown Royal bag, the plastic ziploc bags and the duct tape are "distributing paraphernalia" within the act, and, if this be so, the presumption arises, for the $16,700.00 in currency was certainly "found in close proximity” thereto. See also, Miss.Code Ann. § 41-29-105(v) ((2nd) iv) (Supp.1989). We have considered the reasoning and find it a bit circular. None of the four items — tires, Crown Royal bag, ziploc bags or duct tape — in and of itself proves much of anything, although the presence of marijuana gleanings on two of the ziploc bags certainly suggests they may have been paraphernalia. Miss.Code Ann. § 41-29-105(v) ((2nd) v) (Supp.1989). Law-abiding citizens innocently use items like these every day. It takes the combination of these items with much else to suggest by a preponderance of the evidence that Hickman and Hathcock were involved in illegal drug trafficking. We are not willing to bootstrap on to this general inference a finding that each of the items named is “paraphernalia” and thus generate the presumption of forfeitability. Besides, such is unnecessary in the broader view we take of the proof.

. On this point we commend to one and all the perceptive opinion in United. States v. $38,600.00 in U.S. Currency, 784 F.2d 694, 698-99 (5th Cir.1986).