632 So.2d 1309 (1994)
CITY OF MERIDIAN
v.
Charles David HODGE and Elizabeth D. Hodge.
No. 91-CA-1165.
Supreme Court of Mississippi.
February 24, 1994.
*1310 Lawrence Primeaux, Goldman & Primeaux, Meridian, for appellant.
Henry Palmer, Palmer, Wright & Williamson, Meridian, for appellee.
En Banc.
BANKS, Justice, for the Court:
This appeal presents the question whether the trial court was compelled on the evidence presented to find certain money forfeitable. Put another way, was the City of Meridian entitled to a directed verdict by virtue of the fact that marked "buy" money was found intermingled with other cash in a house trailer residence in which marijuana was also found. We find the issue to be one of fact resolved by the trial court in a manner within a reasonable view of the evidence and thus unreachable under our familiar standard of review.

I
On July 3, 1989, Charles David Hodge and Elizabeth D. Hodge were arrested in Meridian, Lauderdale County, Mississippi, and charged with possession of over an ounce of marijuana with intent to sell. Prior to their arrest, an informant notified the Meridian Police Department that marijuana was being sold from the Hodges' trailer. The police supplied another informant with thirty-five dollars in marked bills with which to purchase a bag of marijuana. The initial informant accompanied the "buyer," who was wired with a recording device, to the Hodges' trailer. Once inside the Hodges' trailer, the buyer stated that Elizabeth Hodge reached under the bar counter in the kitchen and pulled out a bag containing marijuana. She then threw the bag to her husband, who was sitting with the informants in the living room. After the buyer inquired about the cost of the drugs, David responded by telling her it was thirty-five dollars. The money was exchanged and the buyers left. While this transaction was taking place, narcotics agents were outside the trailer recording the conversation at the time of the purchase. The buyers met the narcotics agents at the police station where the marijuana was taken as evidence.
*1311 Search and arrest warrants were subsequently obtained and the police raided the trailer. The police identified themselves and overheard a great deal of commotion inside the trailer. Fearful that evidence was being destroyed, the police kicked down the front door and once inside found David lying on the couch and Elizabeth standing near the kitchen bar. The Hodges were presented with copies of the arrest warrants and were read their Miranda rights. When asked if they had any narcotics on the premises, David went to the freezer and produced a bag of marijuana. A search of the residence revealed several more bags of marijuana which, along with other drug paraphernalia, were on a tray under the couch. In addition, a glass jar was found which contained $479.72. The jar contained various denominations of bills and coins, which included the four marked bills which the police gave the informants to use as "buy money."
The City of Meridian instituted forfeiture proceedings to recover this money. The Hodges' objected on the grounds that the money was separate from the drug sales. In lieu of a formal forfeiture hearing, both parties agreed to allow the court to consider all discovery materials and law enforcement reports in chambers in order to decide the forfeiture issue. The trial court refused to forfeit the entire $479.72 after making the following determinations:
* * * * * *
3. That a jar containing $479.72 made up of both a large amount of change and bills of different denominations was discovered pursuant to a Search Warrant.
4. That the aforesaid jar of money contained $35.00 of marked buy money given to the defendants by law enforcement in purchasing marijuana.
5. That the defendant pled guilty to the aforesaid sales transaction.
6. That there were no test results reflecting the above said funds to be coated with cocaine or other controlled substance.
7. That the primary evidence of the plaintiff is the commingling of "drug money" with personal monies in a common container.
8. That there appears to be no other evidence of use or intended use of the confiscated funds concerned herewith in the violation of any controlled substance statute, and the large amount of small change infers to the court that said funds were more of a personal savings rather than receipts from illicit drug sales.
Contrary to the court's finding above in # 5, both defendants pled guilty to a charge of possession of over one ounce of marijuana, not the sale of marijuana. Count I of the indictment involving the sale of marijuana was dismissed.
The special circuit judge granted a partial forfeiture in which he allowed the City of Meridian to recoup the thirty-five dollars in "buy money." Aggrieved by that ruling the City appeals asserting the following as error:
THE CIRCUIT COURT JUDGE, SITTING WITHOUT A JURY AND HEARING NO ORAL TESTIMONY, WAS IN ERROR BY ANY STANDARD AND AGAINST THE WEIGHT OF THE EVIDENCE IN DENYING FORFEITURE OF MONEY USED BY CHARLES DAVID HODGE AND ELIZABETH D. HODGE IN TRANSACTIONS FOR THE SALE OF MARIJUANA.

II
The appropriate standard of review in forfeiture cases is the familiar substantial evidence/clearly erroneous test. Hickman v. State, ex rel. Mississippi Department of Public Safety, 592 So.2d 44, 46 (Miss. 1991); McClendon v. State, 539 So.2d 1375, 1377 (Miss. 1989); Leatherwood v. State, 539 So.2d 1378, 1387 (Miss. 1989). This Court will not disturb a circuit court's findings unless it has applied an erroneous legal standard to decide the question of fact. Hickman, 592 So.2d at 46.
In forfeiture cases, the burden is upon the State to prove forfeiture by a preponderance of the evidence. See Hickman, 592 So.2d at 46; see also Miss. Code Ann. § 41-29-179(2) (Supp. 1993). Furthermore, Section 41-29-153(a)(7) states in pertinent part that "... [a]ll moneys, coin and currency found in close proximity to forfeitable *1312 controlled substances, to forfeitable drug manufacturing or distributing paraphernalia ... are presumed to be forfeitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption." The $479.72 which is the subject of the forfeiture petition herein was found in the same trailer as were the controlled substances and paraphernalia and in which the sale of marijuana occurred but the record does not reflect where, in the trailer, the money was found. It is clear that the statute creates no presumption by virtue of the fact that "buy money" or other property identifiably the product of drug trafficking is commingled with property or cash, the source of which is unknown. Id.
The Hodges filed an answer to the forfeiture proceedings, denying that the currency was used or intended to be used in violation of the Mississippi Uniform Controlled Substances Law. The Hodges further denied that the currency was in close proximity to the marijuana. When the Hodges filed an answer denying that the property was subject to forfeiture, the burden was placed on the petitioner [City] to prove "by a preponderance of the evidence" that the property is subject to forfeiture. See Miss. Code Ann. § 41-29-179(2) (Supp. 1993); see also Hickman, 592 So.2d at 46.

III
The City argues that because the glass jar containing the currency was found in "close proximity" to the marijuana, there is a strong presumption that the currency should be forfeited. See Miss. Code Ann. § 41-29-153(a)(7) (Supp. 1993). The Hodges', on the other hand, claim that the currency was not in "close proximity" to the drugs or paraphernalia and is therefore not subject to forfeiture.
Although this Court has never interpreted "close proximity" in a forfeiture context, courts in other jurisdictions have done so. In Limon v. State, 285 Ark. 166, 685 S.W.2d 515 (1985), the court upheld the forfeiture of $3,000 found in a kitchen drawer with boxes of plastic bags and aluminum foil. Other drug paraphernalia was on the table and a vial of cocaine was nearby. Seventeen hundred seventy dollars was also found on a bathroom shelf next to a bag of marijuana. The Arkansas Supreme Court defined "close proximity" as follows:
"In close proximity" simply means "very near." For that reason it has been said that the meaning of the term in such a statute is to be determined on a case-by-case basis. Bozman v. Office of Finance of Baltimore County, 52 Md. App. 1, 445 A.2d 1073 (Md. App. 1982), aff'd 296 Md. 492, 463 A.2d 832 (1983). We agree with that approach and do not mean by this opinion to suggest rigid rules for fixing "close proximity" by a particular number of feet, by reference to particular rooms, or by any rule of thumb. Here the two plastic bags containing $1,770 were next to a bag of marihuana. The $3,000 was in two plastic bags in a kitchen drawer along with boxes of plastic bags and aluminum foil. Other drug paraphernalia were on the kitchen table; the cocaine vial was nearby. We think the preponderance of the evidence places all the money, not merely the $1,770, in close proximity to controlled substances or drug paraphernalia. That being true, all the money is presumed under the statute to be forfeitable. There is no burden on the State to show separately a specific intent that the money is to be used in exchange for drugs, because the statute provides that money found in close proximity to forfeitable articles is "presumed to be forfeitable."
Limon v. State, 685 S.W.2d at 516-17.
The record in the present case is silent as to the exact location of where the jar was found and its proximity to the marijuana and other drug paraphernalia. Furthermore, the specific dimensions of the trailer were not stated. What is known is that marijuana was maintained and sold in the kitchen and living room. The search warrant authorized a search of the entire trailer, not just the living room and kitchen. Like the Arkansas court, we are not prepared to define "close proximity" in terms of a measured distance. Neither are we prepared to say that controlled substances anywhere in a residence are considered as a matter of law in "close proximity" to any currency also found *1313 in that residence. Thus, we cannot say that the trial court erred in failing to find that the drugs in question were in such close proximity to the cash as to invoke the statutory presumption.
The inference by the trial judge that the overall sum of money comprised of several small bills and change did not constitute drug sale receipts is also a permissible inference. That a different fact finder might give less weight to this inference because the Hodges were not high volume drug dealers is of no moment. We do not sit to substitute our judgment for that of the trial court.
Clearly, the trial court could have, on this evidence, concluded that all of the cash in question was the product of or used in the trafficking of marijuana. Unaided by the statutory presumption, however, the only evidence in support of this conclusion is the fact that the "buy money" was found with the other cash. Arrayed against this is the Hodges' denial that the money was derived from the sale of drug, the fact that one of the occupants of the trailer was otherwise gainfully employed and the denominations in which the money was found. The weight to be given these evidentiary facts is for the trial court to determine. Its determination, either way, would be affirmed by this Court.

CONCLUSION
The circuit court was not clearly erroneous in finding that only the thirty-five dollars "buy money" was forfeitable. Its judgment is therefore affirmed.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN and McRAE, concur.
SMITH, J., dissents with separate written opinion, joined by PITTMAN and JAMES L. ROBERTS, Jr., JJ.
SMITH, Justice, dissenting:
I am convinced that from a preponderance of the evidence the facts, inferences and probabilities indicate that Charles and Elizabeth Hodge were small-scale dealers engaged in illegal drug transactions, who kept their drug sale profits in a jar in close proximity to their marijuana, and that the learned trial judge's decision not to order forfeiture is erroneous. I respectfully dissent.
A wired informant of the Meridian Police Department told Officer Karl Merchant that she knew she could buy marijuana from the Hodges because they had discussed a drug purchase. The informant and a "buyer" did in fact purchase marijuana with marked currency from the Hodges. Clearly, the Hodges were in the business of selling marijuana Hodges told the informant that he did not have bags of "1/2," but had bags of "1/4" and the price was $35.00. This fact clearly shows "drug dealing business," in that the Hodges were ready, willing and able to make a deal and had pre-bagged specific quantities with an established price. There is the clear indication that the marijuana found in bags underneath the couch, in the freezer, and under the kitchen counter would have been sold by the Hodges had it not been confiscated by the police officers.
More importantly, as an established fact, the informant purchased marijuana in a "1/4" bag for $35.00 using marked currency and the marked bills were found in the jar of money in the trailer home of the Hodges. Although the judgment of the trial court indicates that there was a "large amount of small change" in the jar, in fact there was only $8.72, representing only a small part (1.82%) of the total money in the jar. Of the remaining $471.00 there were 18 $20.00 bills, 7 $10.00 bills, 5 $5.00 bills and 16 $1.00 bills. The denominations of the currency in the jar indicates the likelihood of the money being used in small-scale drug sales transactions. The clear inference is that the Hodges kept their drug dealing money in the glass jar which served as the "cash register" in this illegal, small-business operation.
The finding by the trial judge that the funds in the jar was more likely personal savings is unsupported by the record in this case. There is no proof that this money was not all drug money or was all savings. The only proof is that the glass jar was the final depository for the marked buy money. This undisputed fact, coupled with the obvious and other reasonable inferences that can be drawn from these facts that this was drug *1314 money is much more credible and believable than the conclusion by the trial court.
Charles Hodge was unemployed, and Elizabeth Hodge worked at the local newspaper. A clear inference exists that Elizabeth's income was expended for household expenses, that they were unable to save on her single income, and that the only remaining source for the funds in the jar was from the sale of marijuana.
Marijuana was found in three different locations within the kitchen and living room. The police officers also found drug paraphernalia (marijuana seeds, rolling papers, and a set of scales) in the mobile home. The exact location of the jar is not clear in the record. However, given the size of most mobile homes, it would be most difficult to argue that the money, some of which were marked bills resulting from a previous "buy" by informants, was not in "close proximity" to the marijuana.
In People ex rel. Daley v. $9,403 in U.S. Currency, 131 Ill. App.3d 188, 86 Ill.Dec. 904, 476 N.E.2d 80 (1985), that Court found forfeitable money located in a separate room from the controlled substance. Under statutory language identical to Mississippi's, that Court concluded the statute did not "require that controlled substances and the forfeitable items related thereto be found in the same drawer, box or cabinet as the money." Id. at 192, 86 Ill.Dec. 904, 476 N.E.2d 80.
The burden of proof in the case sub judice is by a preponderance of the evidence and is upon the City of Meridian. In Gardner v. Wilkinson, 643 F.2d 1135, 1137 (5th Cir.1981), that Court stated that "preponderance of the evidence simply means that the evidence which shows that the fact to be proved is more probable than not." This Court in Gregory v. Williams, 203 Miss. 455, 35 So.2d 451 (1948), in introducing an element of comparison for believable evidence stated that preponderance of the evidence was "evidence more convincing to the jury as worth of belief than that in opposition thereto, or such evidence as, when weighed with that opposed to it, has more convincing force." This burden simply requires the greater or more convincing evidence. The burden is far less than clear and convincing evidence or beyond a reasonable doubt.
This Court has added to the review standards of substantial evidence and manifest error, the additional standard "clearly erroneous." As stated in UHS-Qualicare v. Gulf Coast Community Hospital, 525 So.2d 746, 754 (Miss. 1987):
A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.
Also, in S & A Realty Company v. L.B. Hilburn, 249 So.2d 379, 381-382 (Miss. 1971), a case similar to the case at bar with no oral testimony and the record consisting of basically the pleadings, affidavits and exhibits, the Court stated:
It is equally clear, we think, since all of the facts are set out either in the pleadings or the exhibits, there being no oral testimony of witnesses, that this Court is in the same position as the trial court in evaluating the facts and that the chancellor may be reversed if he was in error in his interpretation thereof, whether manifestly in error or not.
The "clearly erroneous" standard applied to the case sub judice with this Court in the same position as the trial court in evaluating the facts leaves the "definite and firm conviction that a mistake has been made." The trial judge was clearly erroneous under the greater weight and more convincing evidence of this case. The facts in the record together with the probabilities and reasonable inferences that may be drawn therefrom, produce a more credible belief that the City's claim that is more likely true than not true. The greater weight of the more convincing evidence is that the Hodges were small-scale dope dealers, but dope dealers nonetheless. They clearly kept their drug sale profits in a jar "cash register" and in "close proximity" to various stashes of marijuana and drug paraphernalia in their mobile home. These *1315 funds should be forfeited to the City of Meridian.
I respectfully dissent.
PITTMAN and JAMES L. ROBERTS, Jr., JJ., join this opinion.