PITTMAN, Justice,
for the Court:

STATEMENT OF THE CASE

This is an appeal of a Judgment from the Circuit Court First Judicial District of Harrison County, Mississippi, wherein a forfeiture of $107,00.00 to the State of Mississippi against Adrian Tagle was granted.
On August 27, 1991, Patrolman Victor Smith, of the Harrison County Sheriffs Department stopped Tagle on Interstate 10 for driving in an erratic manner. After Tagle gave oral and written consent to search his vehicle, Smith found $107,000.00 in a gift wrapped box in the trunk of Tagle’s rented automobile. The property was seized pursuant to Miss.Code Ann. § 41 — 29—153(b)(4) (Supp.1991.)
On September 5, 1991, pursuant to Miss. Code Ann. § 41-29-177(2) (Supp.1991), the State filed its Petition for Forfeiture in the First Judicial District of the Circuit Court of Harrison County. Tagle’s sworn answer was filed on or about September 25, 1991. A Motion to Appear Pro Hac Vice was filed on or about November 18, 1991, by Gus A. Saper, a Texas attorney. The trial court entered an order granting the motion to appear pro hac vice on November 18, 1991.
A hearing on the State’s Petition for Forfeiture was held on November 18, 1991 and the trial court entered its Judgment for Forfeiture on December 13, 1991. Thereafter, a Motion for New Trial, Tagle’s Second Motion for Findings of Fact and Conclusions of Law, and Motion to Amend Findings of Fact and Conclusions of Law and Motion to Amend *918 Judgment was filed by Tagle on December 23, 1991. The Motion for New Trial was denied, but the Motions for Findings of Fact and Conclusions of Law and to Amend Judgment were granted on May 15, 1992.
Aggrieved by the findings of the lower court, Appellant perfected this appeal and assigns the following as error committed by the lower court:
I. THE TRIAL COURT ERRED IN FINDING THAT THE SUBJECT PROPERTY, $107,000.00 U.S. CURRENCY, WAS SUBJECT TO FORFEITURE AND SEIZURE PURSUANT TO SECTION 11-29-153 THROUGH 11-29-185 OF THE MISSISSIPPI CODE OF 1972, AS AMENDED, BECAUSE THERE WAS NO EVIDENCE (OR LEGAL INSUFFICIENT EVIDENCE) THAT THE PROPERTY WAS SUBJECT TO SEIZURE OR FORFEITURE.
II. THE TRIAL COURT ERRED IN FINDING THAT THE SUBJECT PROPERTY, $107,000.00 U.S. CURRENCY, WAS SUBJECT TO FORFEITURE AND SEIZURE PURSUANT TO SECTION 11-29-153 THROUGH 11-29-185 OF THE MISSISSIPPI CODE OF 1972, AS AMENDED, BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT SUCH FINDING, AND THE FINDING WAS CONTRARY TO THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE.
Because the State failed to produce sufficient evidence at trial to connect the money to any criminal activity, the lower court erred in granting forfeiture. We reverse and render the $107,000 to Adrian Tagle.

STATEMENT OF THE FACTS

On November 18,1991, a hearing was held on the Petition for Forfeiture of $107,000.00 before the Circuit Court of Harrison County, Honorable James.E. Thomas, presiding.
The first witness called by the State to testify was the Appellant, Adrian Tagle. Ta-gle stated his name and that he lived in Edinburg, Texas but thereafter refused to answer any questions based upon his Fifth Amendment right against self-incrimination. However, at the close of the trial, the judge asked Tagle his age, educational level, and whether or not he had been informed by counsel that his refusal to testify by assertion of the Fifth Amendment might affect his ability to defend this civil action. Tagle informed the court that he was 27 years of age, had 14 years education, and that he understood that a negative inference may be drawn from this failure to testify.
The next witness called was Patrolman Victor Smith of the Harrison County Sheriffs Department. Deputy Smith was assigned as a patrolman to effect traffic stops on Interstate 10 from county line to county line. Smith testified that on August 27,1991, at approximately 11:43 p.m., he was alone on patrol and travelling 72 miles per hour west bound on Interstate 10 in a “marked” car when Smith came upon Tagle’s vehicle from the rear. Smith followed Tagle for approximately one mile after observing that he was' driving “erratically”. Smith defined driving “erratically” as driving in a “slow weave” or weave back and forth “from the center to the shoulder.” After this behavior continued for approximately one mile over a straight and flat stretch at 65 miles per hour, Deputy Smith turned on his blue lights and Tagle immediately pulled off onto the shoulder of 1-10 West and stopped. Tagle was alone and driving a rented white 1990 Chevrolet Lumi-na, bearing a Texas license plate.
Deputy Smith stated that his reason for stopping Tagle was that he feared that he was under the influence of alcohol or some other substance. When Deputy Smith asked Tagle whether he was drunk, Tagle responded that he was “extremely tired” and had been driving a long time. Tagle also told Smith that he was driving from Ft. Bragg, North Carolina to Edinburg, Texas. Tagle told Smith that he had been visiting friends.
Although Tagle was stopped for investigation of driving under the influence, no field sobriety tests were administered. While Deputy Smith awaited a response from the National Crime Information Center (NCIC) *919 concerning Tagle’s driving and criminal records, Smith talked with Tagle and determined that he was not intoxicated, but was, in fact, “extremely nervous.” Smith also stated that Tagle was perspiring. Smith testified that he did not decide to request consent to search until after he observed Tagle’s nervous demeanor.
After observing Tagle’s nervous behavior, Smith requested, and was given, oral and written consent to search Tagle’s vehicle. Smith told Tagle that he could refuse or stop the search at any time. Tagle made no objection, therefore the search continued. The original consent to search form was introduced into evidence without objection.
A photograph of the trunk of Tagle’s car; which exhibited three gift wrapped packages was introduced into evidence. Smith testified that when he asked Tagle what was in the packages, Tagle responded that the first one was a shirt and some cologne. When Smith asked Tagle what was in the large gift wrapped box, he responded that it contained “fine china.” When Smith discovered that the large gift wrapped box contained a large amount of currency, he immediately read Tagle his Miranda rights. After Tagle was read his rights, he told Smith that the money was his and that it was a gift from a friend who owed it to him. When Smith asked Tagle for the name or phone number of his friend so that he could call him to verify that the money was in fact a gift, Tagle stated that he preferred to talk to his attorney. At that point the questioning ceased and Smith asked Tagle to follow behind him to the Lorraine Road Work Center, where a more thorough search of the vehicle was conducted. Smith testified that Tagle never tried to run away, that Tagle acknowledged he was the owner of the money, and that while they were traveling from the initial stop on 1-10 to the Work Center, Tagle did not try to deviate from following the patrolman, nor did he try to escape.
Smith testified that on that same night he had previously stopped some twenty vehicles and in the twenty stops, he had used his narcotics sniffing dog at least seventeen times. Smith testified that one of his primary purposes on being on 1-10 was to find narcotics, and that he tries to make sure that he has a traffic stop in order to search for narcotics. However, Smith stated that he never took the drug-sniffing dog out of his car and never used it around Tagle’s car. The State stipulated that no drugs were found in Tagle’s car. Smith stated that a lot of people feel nervous in the presence of a police officer and that Tagle’s behavior was as consistent with innocent activity as it was with some guilty activity. Smith testified that to the best of his knowledge, he had no evidence that Tagle was doing anything more than driving from Fort Bragg, North Carolina to Edinberg, Texas. ■ He testified further that he had no reason to believe, other than the traffic offense,[1] that Tagle had violated any laws of the State of Mississippi.
Deputy David Davenport, a Harrison County Sheriffs Department investigator assigned to the Multi-Jurisdictional Narcotics Task Force since January of 1988, was allowed to make the proffer[2] that on August 28,1991, he contacted Evaldo Pena, an investigator with the Edinberg County Sheriffs department, who informed him that Tagle had a May 1991, cocaine charge pending against him. Davenport stated that the currency seized was divided into denominations of hundreds, fifties, twenties, tens, and possibly fives.
After the parties rested, Judge Thomas found (1) that the officer did not have probable cause to search the ear, (2) that the officer did have a right to ask to search the car, which he did, pursuant to valid consent given by Tagle, (3) that the circumstances surrounding the finding of the money did amount to probable cause to search the balance of the car, and finally, (4) that Tagle’s statement that the money was china, that the money was given by an unnamed, unidentified friend, and the amount of the money found, taken together and absent anything *920 else created grounds for the State to have the money forfeited.

LAW

Standard of Review

Forfeiture is not a criminal prosecution. In considering whether a judgment is contrary to the great weight and preponderance of the evidence the Court will decide whether the evidence- preponderates in the plaintiffs favor, that is, “produces rational belief that the factual predicates of the plaintiffs claims are more likely true than not.” Hickman v. State of Mississippi, ex rel., 592 So.2d 44 (Miss.1991). The trier of fact may act on circumstantial evidence as well as direct evidence. Id. at 46. The Court in Hickman stated:
Our scope of review is the familiar substantial evidence/clearly erroneous test. McClendon v. State, 539 So.2d 1375, 1377 (Miss.1989); Leatherwood v. State, 539 So.2d 1378, 1387 (Miss.1989); Kight v. Sheppard Building Supply, Inc., 537 So.2d 1355, 1358 (Miss.1989). The question is not how we would have resolved the evi-dentiary and ultimate fact disputes had we been the triers of fact, but whether, given the record, a reasonable fact-finder may have done as was done. This standard substantially limits appellate review of the facts, save only where the circuit court has applied an erroneous legal standard to decide the question of fact. McClendon, 539 So.2d at 1377; Leatherwood, 539 So.2d at 1387.
Hickman, 592 So.2d at 46. With this standard in mind, this Court reviewed the following assigned errors together.

I. DID THE TRIAL COURT ERR IN FINDING THAT THE SUBJECT PROPERTY, $107,000.00 U.S. CURRENCY, WAS SUBJECT TO FORFEITURE AND SEIZURE PURSUANT TO SECTION 1,1-29-153 THROUGH 11-29-185 OF THE MISSISSIPPI CODE OF 1972, AS AMENDED, BECAUSE THERE WAS NO EVIDENCE (OR LEGAL INSUFFICIENT EVIDENCE) THAT THE PROPERTY WAS SUBJECT TO SEIZURE OR FORFEITURE'?

II. DID THE TRIAL COURT ERR IN FINDING THAT THE SUBJECT PROPERTY, $107,000.00 U.S. CURRENCY, WAS SUBJECT TO FORFEITURE AND SEIZURE PURSUANT TO SECTION 11-29-153 THROUGH 11-29-185 OF THE MISSISSIPPI CODE OF 1972, AS AMENDED, BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT SUCH FINDING, AND THE FINDING WAS CONTRARY TO THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE?
Previously this Court has said that it does not favor forfeitures, and, before forfeitures will be decreed or adjudged, they must come within the terms of the statute imposing that liability. Neely v. State ex rel Tate County, 628 So.2d 1376, 1381 (Miss.1993). It certainly is true that forfeiture to be valid must comport with the statute. It is not accurate to say that we do not favor forfeiture. What we do favor is a careful and correct application of the law and we do not hold forfeiture in favor or disfavor. It is a tool of public protection, a tool of law enforcement and forfeiture is precisely mandated by statute and when the statute is carefully and correctly followed we will favor such forfeiture and when the statute is not followed or supported by necessary evidence we will disfavor such forfeiture. The State alleged in its Petition for Forfeiture that the $107,000.00 seized was subject to forfeiture under the provisions of Section 41-29-153(a)(5) and 41-29-153(a)(7) of the Mississippi Code of 1972 as amended. Miss.Code Ann. § 41-29-153(a)(5) & (7) states:
(a) The following are subject to forfeiture:
(5) All money, deadly weapons, books, records, and research products and materials, including formulas, microfilm, tapes and data which are used, or intended for use, in violation of this article[3];
*921 (7) Everything of value, including real estate, furnished, or intended to be furnished, in exchange for a controlled substance in violation of this article, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, businesses or business investments, securities, and other things of value used, or intended to be used, to facilitate any violation of this article. All moneys, coin and currency found in close proximity to forfeitable controlled substances, to forfeitable drug manufacturing or distributing paraphernalia, or to forfeitable records of the importation, manufacture or distribution of controlled substances are presumed to be for-feitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption....
The State alleged that the property was lawfully seized pursuant to Miss.Code § 41-29-153(b)(4). Section 41-29-153(b)(4) states:
(b) Property subject to forfeiture may be seized by the bureau, local law enforcement officers, highway patrolmen, the board, or the State Board of Pharmacy upon process issued by any appropriate court having jurisdiction over the property. Seizure without process may be made if:
[[Image here]]
(4) The bureau, local law enforcement officers, highway patrolmen, the board, or the State Board of Pharmacy have probable cause to believe that the property was used or is intended to be used in violation of this article.
The statute requires the property to be subject to forfeiture under part (a), then part (b) explains how law enforcement personnel may seize the property.
This Court has on many occasions decided forfeiture questions under the above quoted statute.[4] This Court has never specifically dealt with a forfeiture case where not a trace of drugs or paraphernalia were found. In fact, the State stipulated that there were no drugs involved in this case. This case is also distinguished because Tagle refused to comply with discovery requests and refused to testify. The State argues that we should consider drug courier profile factors as proof that the money was derived from drug dealing even though the State made no argument regarding these factors at trial.
The State cited to United States v. $38,-600.00 in U.S. Currency, 784 F.2d 694 (5th Cir.1986) for consideration of the following factors in determining whether or not seized currency is connected with drug trafficking: (1) the discovery of a large amount of money; (2) the claimant’s explanation concerning the source of the money; (3) the claimant’s explanation concerning his destination; (4) the claimant’s explanation concerning the intended use of the money; (5) the presence of drug paraphernalia; (6) the claimant’s past involvement “in narcotics transactions ... by testimony of past drug-related activi-ties_”; (7) a notepad discovered of recorded drug transactions; (8) the absence of evidence of legitimate employment; and (9) the claimant’s failure to file tax returns. Id. at 698.
Taking the above factors into consideration, we must note that the evidence presented by the State failed to show that the seized amount was found in close proximity to any of the following: (1) forfeitable controlled substances or (2) forfeitable drug manufacturing or distributing paraphernalia, or (3) forfeitable bill of records of importation, manufacture or distribution of controlled substances. Additionally, the State did not introduce any evidence at all that the $107,000.00 seized was intended to be furnished in exchange for a controlled substance or were proceeds traceable to such an exchange or were to be used or intended to be used to facilitate any violation of Article 41-29-153 through 41-29-185. Further the State did not establish any connection between the money and any drugs or drug trafficking. The State stipulated that this case did not involve drugs, and we cite the following colloquy from the record: “Zero drug whatsoever found, no hint of drug, cor *922 rect? That’s correct. That is a stipulation? Yes sir, it is ... ”. Further Patrolman Smith testified that there was no evidence that Tagle was doing anything more than driving from Fort Bragg, North Carolina, to Edin-burg, Texas and that Smith testified that he had no reason to believe that Tagle had violated any laws of the State of Mississippi and there was nothing special about the money found in Tagle’s vehicle.
This decision turns upon the lack of evidence presented by the State. As stated earlier, the State must prove that it is more likely than not that the currency was possessed by the claimant with the intent to be used in connection with an illegal narcotics trafficking scheme. Reed v. State, 460 So.2d 115, 118 (Miss.1984). The forfeiture may be based wholly on circumstantial evidence and inference. Id. However, mere suspicion with record evidence is inadequate to support a forfeiture. Ervin v. State of Mississippi ex rel. Mississippi Bureau of Narcotics, 434 So.2d 1324 (Miss.1983). This Court in Hickman v. State ex rel. Miss. Department of Human Services, 592 So.2d 44 (Miss.1991), accepted the use of evidence of drug courier profiles to support the forfeiture of seized property. Hickman, 592 So.2d at 47. In Hickman, a veteran employee of the Mississippi Bureau of Narcotics was tendered and accepted as an expert on the behavior of narcotics violators and traffickers. While the officer did not testify as to whether the money seized were.funds of drug trafficking nor did he state whether the defendant fit a drug courier profile, the officer did testify that certain items found in the car (crown royal bag, ziploe plastic bags, duct tape, $16,700.00 currency in $20 and $50 bills, and two spare tires) were items commonly used in drug operations. The Hickman Court did not solely rely upon the drug courier profile. Thus, Hickman is distinguishable from the case sub judice in that at trial the State did not present expert testimony and offered no evidence as to a drug courier profile.
We decline to accept the State’s offer to consider the drug courier profile factors on appeal where, as in this case, the State wholly fails to put on any evidence regarding the profile and the court below did not consider the factors in making its determination. In sum, there was no evidence of such a “profile” presented to the trial court. Tagle was given no opportunity to cross-examine any witness on what a drug courier profile may or may not be. If the State had wanted to rely upon the drug-trafficker “profile,” then the State should have made the case by proving salient parts of the “profile.” Not only did the State fail to put on such evidence, there was no evidence of a crime committed. Nor did the State produce an expert witness to testify regarding the “profile.”. Nor did the State put on proof, other than the money seized, that items found or circumstances surrounding the stop of Tagle indicated the drug courier profile.
The State relied very heavily in its brief on the passages previously quoted by this Court from United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($36⅛,960.00) In United States Currency, 661 F.2d 319 (5th Cir.1981) wherein the Fifth Circuit held:
... From the sheer quantity of currency seized under these circumstances,[5] a court may permissibly infer a connection with illegal narcotics trafficking. In United States v. Magnano, 543 F.2d 431, 437 (2d Cir.1976), cert. denied, 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977), the Second Circuit held that possession of a large amount of cash by a defendant charged with participation in a narcotics trafficking conspiracy was relevant admissible evidence of such participation:
[T]he possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale is similar to the possession of special means, such as tools or apparatus, which is admissible to show the doing of an act requiring those means, [quoting United States v. Tramunti, 513 F.2d 1087, 1105 (2d Cir.1975), cert. denied, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50.].
661 F.2d at 324. (emphasis added).
This Court cited to the above quoted passage in Reed v. State and Jackson v. State. *923 Both times the Court found that the money was forfeitable. However, in both eases there was a connection between drug activity and the money. In the case sub judice there is no connection between the money and drug activity. There was no proof, other than the large sum of money, in the record to indicate that Tagle fit a drug courier profile. Although it may be true that the money seized from Tagle was “drug money,” the State during the hearing did not relate significant evidence as being indicative of drug profile activity or have anyone qualify as an expert to testify to such a profile.

CONCLUSION

This Court finds that there appears to be no legal basis for the forfeiture. This Court has held that for forfeitures to be decreed or adjudged, they must come within the terms of the statute imposing liability. Neely v. State 628 So.2d 1376, 1381. The forfeiture statutes require that in order to be subject to forfeiture the seized money be used or intended to be used in violation of Uniform Controlled Substances Law. The statutes also require that before the property may be seized without process the seizing officer must have “probable cause” to believe the money was used or intended to be used in violation of the article.
After reviewing the record, it appears that a nexus between drug activity and the money is completely lacking in this case. It was stipulated that no drugs were found. As stated earlier, the State at the hearing did not properly put on any profile evidence. Based upon the foregoing, the Court reverses the forfeiture.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.

. Tagle was given a ticket by Smith for driving under a suspended license.

. Tagle’s attorney objected to this questioning on hearsay grounds. However, the judge allowed the proffer. The judge sustained the objection during his oral ruling.

. “Article" refers to the entire Mississippi Uniform Controlled Substances Act. Miss.Code Ann. §§ 41-29-101, et seq.

. See Reed v. State, 460 So.2d 115 (Miss.1984); Jackson v. State, 591 So.2d 820 (Miss.1991); Hickman v. State, 592 So.2d 44 (Miss.1991); Jones v. State, 607 So.2d 23 (Miss.1991); Neely v. State, 628 So.2d 1376 (Miss.1993).

. In this case along with the cash the officers discovered gun and a silencer, hashish, cocaine, and pharmacist scales.